## Keats v. Gas Company of Luzerne County, Appellant.

*Waters—Damages—Evidence.*

In an action to recover damages for injuries to property caused by the damming up of a stream, where the plaintiff describes the condition of the property immediately after the injury, a witness for the plaintiff may be permitted to testify as to the costs of the repairs necessary to restore the property to its former condition, although the estimate was made two years after the flood. Such testimony although incompetent taken by itself, becomes competent when taken in connection with the testimony of the plaintiff.

In such a case where it appeared that the injuries were caused during an extraordinary flood by the accumulation of debris against defendant's gas pipe which crossed the stream beneath a bridge, the defendant may show that during extraordinary floods prior to the placing of the gas pipe across the stream, the banks overflowed and injured plaintiff's property.

In a doubtful case, it is better to admit testimony offered that may be competent and relevant from any point of view, and determine later whether or not the testimony meets the requirements of the offer. This is particularly true when offers have been amended a number of times, in order to meet objections raised by counsel or by the court in ruling them out.

In an action to recover damages for injuries to property by reason of a flood, it is proper to admit testimony as to the general character of the flood, as to the amount of rainfall and snow, and the condition of the temperature at the time of the flood.

*Waters—Damages—Measure of damages—Charge of the court.*

In an action to recover damages for injuries caused by flooding the banks of a stream, the court refused the following point: "The measure of damages to plaintiff's premises, the injury not being shown to be permanent, is the cost of restoring it to its former condition, together with compensation for the loss of its use." All that the court said in its general charge on the question of damages was that "the cost of remedying the injury to the real

and personal property is the true measure of damages." *Held,* that the refusal of the point was error and that the instruction as to damages was wholly inadequate.

Where an injury to a house is not of a permanent character the measure of damages is the cost of restoring the property to its former condition, together with compensation for the loss of its use, unless such costs should exceed the value of the building, in which case such value would be the measure of damages.

In an action to recover damages to land by the flooding of a stream, if it appears that the negligence of the defendant conspired with the act of God to cause the injury, and that the injury was due primarily to the negligence of the defendant, the latter is liable.

Argued Jan. 12, 1905.  Appeal, No. 67, Jan. T., 1905, by defendant, from judgment of C. P. Luzerne Co., Oct. T., 1902, No. 889, on verdict for plaintiff in case of Martha Keats v. Gas Company of Luzerne County.  Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Reversed.

Trespass to recover damages for injuries to real estate.  Before LYNCH, P. J.

At the trial it appeared that on December, 1901, plaintiff's property was flooded during an extraordinary flood, and injuries sustained for which this suit was brought.

The plaintiff claimed that the injuries were due to the blocking up of a stream by the gas pipe of defendant company.

When H. B. Emory was on the stand, he was asked this question :

Q. State what it would cost, what you estimate it would cost, to restore this building as you have figured it there ?

Defendant's Counsel: Q. When did you examine the building?  A. December 1, 1903.  Q. That is the first time you examined it?  A. Yes, sir.

Defendant's Counsel : We object.

The Court : Objection overruled, exception noted, bill sealed for the defendant.

A. $228, that is what it would cost to put the building in proper order again.

Q. What, in your judgment, would have been the fair value for replacing that, or for putting in that new wall that you saw ?

Defendant's Counsel : We object.

Plaintiff's Counsel : I propose to show by the witness what it was reasonably worth.

Defendant's Counsel: We object to this because the witness is not familiar with the wall at the time it was built or rebuilt, and don't know to what extent it was necessary to rebuild it or refix it.

The Court: Objection overruled, exception noted for the defendant, bill sealed. [1]

Q. What in your judgment would be a fair estimate of the cost of rebuilding that wall that you say you saw rebuilt there ? A. The size of the kitchen, I think, is twelve by fourteen and thirty-eight feet around, $46.50.

When Ira Hartwell was on the stand the following offer was made :

Defendant's Counsel: I propose also to prove by the witness that extraordinary floods were there for the last time in 1880, and that there was no gas pipe or gas main under any of the bridges, and that at that time the banks overflowed and inundated, among others, the property in question.

Plaintiff's Counsel : Objected to for the same reason.

The Court: Objection sustained, exception noted for the defendant, bill sealed. [4]

Verdict and judgment for plaintiff for $443. Defendant appealed.

*Errors assigned* were (1–17) various rulings on evidence, quoting the bill of exceptions ; (18) pórtions of charge quoted in the opinion of the Superior Court; (20) refusal of defendant's second point quoted in the opinion of the Superior Court.

*James L. Morris* and *John T. Lenahan,* for appellant.—The court erred in permitting a witness, Howard B. Emory (who first saw the damaged property in December, 1903, two years after the occurrence and when the damages had been repaired), to give an estimate of the amount of damages and the cost of the repairs that had been made : Michael v. Pipe Line Co., 159 Pa. 99.

Error in refusing to allow the defendant to show fully all the particular and peculiar circumstances and surroundings of

the stream whose overflow caused the alleged damages, and to establish that these and the admitted extraordinary flood would have caused the plaintiff's injuries independently of any negligence on the part of the defendant: Michael v. Cresent Pipe Line Co., 159 Pa. 99; Brown v. Railway Co., 183 Pa. 38; Livezey v. Philadelphia, 64 Pa. 106; B. & O. R. R. Co. v. Sulphur Spring Independent School Dist., 96 Pa. 65; Helbling v. Allegheny Cemetery Company, 201 Pa. 171.

There was error in the court's instruction to the jury as to defendant's negligence and the measure of damages.

*James L. Lenahan,* for appellee.

OPINION BY BEAVER, J., November 21, 1905:

The plaintiff brought her action of trespass against the defendant to recover for damages to her dwelling house and lot occasioned, as she alleged, by the overflow of a stream across which a dam was formed by the debris carried down the stream against the gas pipe of the defendant which crossed the stream beneath a bridge which spanned it.

The situation is graphically described by a witness of the plaintiff who said, in answer to queries : " Q. What did you see ?   A. I saw an old tree stuck in there against the pipe and against them braces, and a lot of old doors from the Ashley shops and rubbish and briars and everything, right in there tight up against the pipe.   Q. Was the water passing under the bridge then or going out the other side above the bridge ?   A. Going out the other side.   There was a little going through, but not much.   Q. How was the creek on the lower side of the bridge with reference to the channel being full or not ?   A. It was not overflowing the banks on the lower side of the bridge."

The jury having found for the plaintiff, the conditions described have been found to have existed and the responsibility of the defendant is thereby established.

We have twenty-one assignments of error, which are discussed under three distinct propositions by the appellant.

1. The first is as to the admission of the testimony of a witness of the plaintiff who testified as to the damages sustained by the plaintiff, based upon the cost of the repairs necessary to

restore the property to its former condition. The testimony of this witness would of itself have been incompetent, inasmuch as he made the estimate after the repairs had been made and two years from the time of the flood had elapsed. Taken in connection, however, with the testimony of the plaintiff, we think it was competent. The testimony was submitted in connection with that of the plaintiff. The jury could, therefore, first determine whether the testimony of the plaintiff as to the condition of the property after the flood was credible and, assuming it to be true, whether or not the testimony of the witness, based upon information furnished by her, was to be believed. Full opportunity for cross-examination was given and upon a careful examination of the testimony, we can see no error in its admission.

2. In a number of offers, running through various assignments of error, the defendant finally made the following offer: " I propose now to prove by the witness that in 1879 and 1880 this creek was in the same condition as it was in the flood of 1901, as to the height of the banks and the condition generally of the land adjacent to the creek, including the property in dispute ; that in those years there were several extraordinary floods ; that no extraordinary flood has been had there since, until the flood in question, and that during those floods in the later seventies and fore part of eighty, the banks overflowed properties along the creek, among them the property in question, and that at the same time there were no obstructions in the way of gas pipe, or anything of that kind, or any bridge to interfere with the natural flow of the water. I propose also to prove by the witness that extraordinary floods were there for the last time in 1880 and that there was no gas pipe or gas main under any of the bridges, and that at that time the banks overflowed and inundated, among others, the property in question." If the offer had gone a little further and had offered to prove that the property was damaged as well as overflowed or inundated, there could have been no question as to the admissibility of the offer. Even as the offer was made, it may have had some relevancy from some points of view. Why the defendant should have offered the testimony, however, and why the plaintiff should have objected to it is not clearly apparent, the inference being irresistible, if the offer had been made good,

that, if the stream was unable to vent the water without the bridge and the gas pipe, it would certainly have been impossible for it to have done so with these hindrances in the way so that the flood drift lodged as shown by the plaintiff's testimony. That, however, is a question for the defendant. In a doubtful case it is better to admit testimony offered that may be competent and relevant from any point of view, and determine later whether or not the testimony meets the requirements of the offer. This is particularly true when offers have been amended a number of times in order to meet objections raised by counsel or by the court in ruling them out. We are of opinion that it would have been wiser to have heard the testimony notwithstanding the fact that the conditions in regard to the bed of the stream had been entirely altered by the erection of the bridge and the suspension by the defendants of a gas pipe six inches in diameter, 3.6 feet above the ordinary level of the water, the distance from the top of the pipe to the lower edge of the girder being 4.4 feet. Whilst no one could say as a matter of fact, what the effect of the flood might have been if the bridge and gas pipe had not been there, the facts as proposed if they had been proved would have enabled the jury to draw some inferences which might have been of use in determining the question at issue. These remarks will apply to offers of a similar character as to the testimony of several other witnesses. We therefore conclude that the offer should have been admitted.

The offer relating to the general character of the flood, as to the amount of rainfall and snow and the condition of temperature existing at the time of the flood, were fairly admissible. It seems to us, therefore, that the sustaining of the objections complained of in the 12th, 13th, 14th, 15th, 16th and 17th assignments of error was erroneous, although as to some of them it appears that the court did not sustain the objections on the ground that the evidence was irrelevant and immaterial, but that the facts stated in the offer had already been shown.

3. The defendant presented several points for charge, all of which were practically affirmed, with the exception of the first and second, the second being : " Second, The measure of damages to plaintiff's premises, the injury not being shown to be permanent, is the cost of restoring it to its former condition,

together with compensation for the loss of its use." This point was negatived by the court. It is practically admitted by the appellee that it could properly have been affirmed, as containing the proper measure of damages, but it is averred that practically the same rule as to the measure of damages was laid ·down in the general charge and that the appellant was not injured, because the point was not read and that, therefore, the jury was not informed in any way as to the character of the ruling. We do not agree with this contention. It is not necessary to argue that the point contained the proper measure of damages, nor is it necessary to cite authorities upon the subject. In his charge the trial judge, in commenting upon the province of the jury, finished the paragraph by saying : " The cost of remedying the injury to the real and personal property is the true measure of damages." This is the only reference to the subject which was a vital question and called for specific instructions. Whilst the remark of the trial judge was correct so far as it went, it did not cover the entire subject, nor was it emphasized in such a way as to call the particular attention of the jury to it. The true rule, as laid down in 13 P. & L. Dig. of Dec. 22,773, is, " Where an injury to a house is not of a permanent character, the measure of damages is the cost of restoring the property to its former condition, together with compensation for the loss of its use, unless such costs should exceed the value of the building, in which case such value would be the measure of damages."

The defendant's point clearly outlined the true measure of damages.. It was correct in principle and clear and intelligible in form and substance. It was not alleged that the damages sustained exceeded the value of the building and hence the point covered the entire ground. The defendant was, therefore, entitled to have it affirmed, particularly in view of the fact that the rule had not been clearly and fully set forth in the general charge. The general rule of the cases, as gathered in 2 P. & L. Dig. of. Dec. 2600, is that " An answer may also be by reference to the general charge, if this sufficiently covers the point; and the refusal of a point fully covered in the general charge is not assignable for error. A point may be refused without being read to the jury, if the law applicable to the case has been correctly stated in the general charge, or the

reading of the point would tend to mislead the jury; and, when the general charge only indirectly covers points, their refusal, without being read to the jury, except to the extent to which they are covered in general charge, is a sufficient answer."

4. The eighteenth assignment of error complains of the language employed by the trial judge in the general charge, in which he says, quoting the entire sentence, of which the defendant assigns for error but a portion : " If the rise of water and consequent injury to plaintiff's property, in case it was injured, was due wholly and entirely to the act of God in making a great flood, the company should not pay. But, if the company were partly negligent and its negligence produced injury to this woman's property, it must pay." Strictly speaking, the company could not be partly negligent. It was either negligent or it was not so. What the court evidently meant was that if the negligence of the company conspired with the act of God to cause the injury, and the injury was due primarily to the negligence of the company, it was liable. The principle is correct. The form of its statement is perhaps somewhat objectionable, although we would not regard it ground for reversal, if it stood alone.

We regard the refusal of the court to affirm the defendant's second point as the principal error in the case. How far the defendant's case was hurt by the ruling out of the testimony contained in the offers as to which complaint is made there may be a question; but, so far as they were in any way relevant, they should have been received, and, inasmuch as the case goes back for a new trial, we have devoted some space to their consideration.

Judgment reversed and a new venire awarded.