# Green *v.* Sun Company, Appellant.

*Nuisance—Fumes from oil refinery—Special injury to plaintiff—Evidence—Damages—Landlord and tenant.*

A corporation which is not invested with the right of eminent domain is liable to another who sustains a special injury in person or property from the operation of its works.

In an action of trespass to recover damages for injuries to buildings resulting from fumes from an oil refinery where a nuisance is charged and proved, it is not necessary to show negligence, although the statement of claim charges negligence.

In such a case a verdict and judgment for plaintiff will be sustained where evidence is admitted which tends to show that the defendant's refinery was the only one in the vicinity engaged in refining Texas oil; that immediately after the works were put in operation sulphurous fumes were thrown out; that a corrosive precipitate was deposited from these fumes; that paint upon plaintiff's houses was destroyed, paper on their walls blackened, and their metal roofs corroded; that other property in the same neighborhood was affected in the same way as that of the plaintiff; and that witnesses were affected in their persons by the fumes.

In such a case it is no defense that the defendant was at a disadvantage because of the number of persons residing in the same neighborhood who had similar causes of complaint, and had a common interest in the result of the litigation; nor that the defendant had erected extensive works at large cost, and was engaged in the prosecution of a business useful to the public, and that the plaintiff's rights were subordinate to the larger interests of the defendant and the public.

A landlord may recover for injuries to his freehold caused by a nuisance, although such property may at the time be in the actual possession of a tenant.

In an action to recover damages for injuries to real estate resulting from a nuisance a verdict and judgment for plaintiff will not be reversed, because the trial judge in his charge stated the amount of plaintiff's claim, where it appears that there was no intimation from the court that that was the amount to which the plaintiff was entitled, and it appears that the jury was particularly directed to take into consideration all the evidence bearing upon the question as to what would compensate plaintiff for his loss.

*Practice, C. P. —Verdict—Judgment—Interest.*

A judgment will not be set aside because the amount thereof is a lumped statement of the amount of the verdict and interest thereon

to the date of the entry of the judgment. The appellate court will, however,.modify the judgment so that it shall be entered in favor of the plaintiff for the amount of the verdict, stating it, with interest from the date of the verdict.

Argued Nov. 21, 1906.   Appeal, No. 189, Oct. T., 1906, by defendant, from judgment of C. P. Delaware Co., Sept. T., 1902, No. 233, on verdict for plaintiff in case of Job L. Green v. The Sun Company. Before RICE, P. J., PORTER, HENDER- · SON, MORRISON, ORLADY, HEAD and BEAVER, JJ.   Affirmed.

Trespass to recover damages for injuries to real estate resulting from fumes from an oil refinery.   Before JOHNSON, P. J.

At the trial the plaintiff under objection and exception testified that the fumes given off by defendant's works smelled like rotten eggs, that they caused deposits like stove blackening, destroying paint and wall paper, and also the metal on the roofs of his houses.   He also testified under objection and exception that these effects were observed immediately after the defendant's works were put in operation. [1–4] The plaintiff's wife under objection and exception testified to the same effect. [5]

Another witness testified to the existence of such fumes, the effects upon her property, and upon his person. [6]

When Ellwood B. Worrilow, a witness for defendant, was on the stand he was asked this question :

" Q. Speaking about the employment by the Sun Company— what is their pay-roll ; the number of hands ? "

Mr. Robinson : I object to that unless we are permitted to go fully into it.   I do not want to crowd anything out, but I do not want half to go in, and I do not see how that has any bearing in the case.

The Court: Of what importance is it?

Mr. Broomall : My thought is just the line of thought I have several times indicated, that the actionability of any industrial establishment in a community, the line of actionability and non-actionability is not a hard and fast fixed line.   Every man in the community, and as it necessarily follows, the community as a whole balances the advantages and the disadvantages in determining whether or not any annoyances that arise from the establishment are such as men ordinarily are willing,

quite willing to bear for concomitant advantages.   Now, inasmuch as this line is a wavering line, and it might be said that if an industrial establishment came into Marcus Hook from which no advantage at all was derived, employed nobody in Marcus Hook, no advantages direct or indirect, every man in fixing the line of disadvantages that he would endure would fix the line hard and fast against such an establishment; but if, on the other hand, an extreme case—if there was an establishment upon which the very life and being of the town depended so that we might say nobody would live there at all if it was not for the establishment, it employs so many hands and permeates the entire community with advantages that run through every rivulet—that affects everybody—as against an institution of that kind, the sense of the community which the law would recognize, would place that line of annoyances which the community would bear very much more liberally in favor of the establishment.   It is for the purpose of showing the number of hands that this establishment employs with a view of permitting the jury to see to what extent a town of 1,400 inhabitants must depend upon, and very extensively depend upon the life and being of this establishment employing as many hands as it does.   It is with that line of thought that we advance the offer.

The Court: Objection sustained. [7]

" Q.  Now all this process of operation that Mr. Dickinson has called your attention to, requires the labor of how many men ? "

Mr. Robinson: That is open to our objection.

Objection sustained. [8]

Robert Cash, being sworn for defendant:

" Q.  Have you or your family ever had any bad effects from the oil odors in Marcus Hook ? "

Mr. Robinson: I object to this question whether he or his family have ever had any bad effects from this odor as irrelevant and immaterial.

The Court: If that question does not include—

Mr. Broomall: I mean physically.   You may qualify the question.   This is what I intended.   Any physical effect.

The Court: The objection is sustained. [9]

Mr. Broomall: Now we offer to prove by a large number of other witnesses—make the same offer.

Mr. Robinson: Objected to.
Objection sustained. [10]

The court charged in part as follows:
[Because we say to you that if this company did carry on
its works in such a way that the gases or fumes emanated
from them and injured the paints and papers on the houses,
these tenement houses occupied by tenants of the defendant;
in a substantial manner, then he is entitled to recover what-
ever it cost—whatever it has cost him in the past—whatever
it will cost him in the future to restore them to the condition
in which they were before they were injured, if you shall find
that they shall be injured by these smokes or fumes or gases
or whatever they may be.] [11]

[The court does not intend to refer to the testimony upon
that question except to say that the plumbers and painters
were called. The plaintiff claims that he has shown to you
that it has cost him, or will cost him, reasonably cost him,
$1,723.81, and he says that is what he claims you should award
him, and that it will require that to put him where he was be-
fore these people subjected his property to the influences of these
gases.

The defendants called some witnesses, called two, the plumber
and painter, probably more, if you will remember, and you will
remember the testimony—the court does not recall what they
said about it, but you must take into consideration all of it in
passing upon the question as to what will compensate this
plaintiff.] [12]

Defendant presented these points:

2. There is no evidence in this case that the business of the
defendant is such as necessarily produces substantial injury to
the plaintiff. *Answer :* This is refused. We can't say—that
point has two meanings to it. We do not say that the evidence
shows that the business of the defendant is such as necessarily
produces substantial injury to the plaintiff, but we leave it to
you to say whether or not these gases or fumes did produce
the mischief, substantial injury, of which the plaintiff com-
plains. [13]

3. If the jury were to decide that the business of the de-
fendant necessarily produces substantial injury to the plaintiff,

the result would be that the defendants would have to abandon their works.  *Answer :* That is refused. [14]

5. In the absence in this case of any evidence that the defendant's business necessarily produces substantial injury to the plaintiff, and in the absence in this case of any evidence of negligent operation, the plaintiff is not entitled to recover, and the verdict should be for the defendant.  *Answer :* That is refused. [15]

9. If the jury believe that the injuries of which the plaintiff complains are only such as men ordinarily undergo in order to obtain the advantages to themselves and their property which accompany the increase of population and industry, the verdict should be for the defendant, and in coming to a conclusion the jury should take into consideration the established oil industries of Marcus Hook, their magnitude, extent, and the manner in which the atmospheric conditions are always affected wherever such industries exist and are operated.  *Answer :* There are some propositions in this point which, if stated separately, might be affirmed, but as a whole it is refused. [16]

10. Under the evidence in this case, none of which is applicable to the pleading, except that which refers to injuries to real estate in the possession of tenants, the verdict should be in favor of the defendant.  *Answer :* That is refused. [17]

18. The court erred in the answer to defendant's eleventh point.  The point and answer are as follows :

Under all the evidence in this case the verdict should be in favor of the defendant.  *Answer :* Refused. [18]

Verdict and judgment for plaintiff for $1,308.75.  Defendant appealed.

*Errors assigned* were (1–10) rulings on evidence, quoting the bill of exceptions ; (11–18) above instructions ; and (19) in entering judgment for $1,308.75, and in not entering judgment for the amount of the verdict, $1,250.

*W. B. Broomall*, with him *W. I. Schaffer*, for appellant.— The evidence of alleged injurious effects upon the properties of other persons, which they alleged to be attributable to the defendant, is not relevant to the issue.  Much less is evidence admissible tending to show injurious physical effects upon the plaintiff and other persons living in the neighborhood.

An injury to the possession of a tenant cannot be redressed by the landlord : Greber v. Kleckner, 2 Pa. 289.

If the evidence of witnesses as to physical effects to themselves and injuries to their property had any relevancy to the issue, such evidence should have been available as well to the defendant as to the plaintiff.

The court in charging the jury submitted a statement of the amount of damages claimed by the plaintiff, $1,723.81. This was error : Lerch v. Bard, 177 Pa. 197 ; Fineburg v. Passenger Railway Co., 182 Pa. 97 ; Hayes v. Penna. R. R. Co., 195 Pa. 184 ; Burns v. Penna. R. R. Co., 213 Pa. 280.

It is submitted that the judgment in this case was erroneously entered.

*O. B. Dickinson,* with him *V. G. Robinson,* for appellee.— The plaintiff rests upon the proposition that a corporation not in the exercise of the right of eminent domain which, in the operation of its works, causes special injury to another, is guilty of an actionable nuisance whether there is proof of negligence or not : Gavigan v. Atlantic Refining Co., 3 Pa. Superior Ct. 628 ; s. c., 186 Pa. 604 ; Rogers v. Traction Co., 182 Pa. 473 ; Farver v. American Car & Foundry Co., 24 Superior Ct. 579 ; Hauck v. Tidewater Pipe Line Co., 153 Pa. 366 ; Stokes v. Penna. R. R. Co., 214 Pa. 415 ; Pottstown Gas Co. v. Murphy, 39 Pa. 257.

If appellant had wished the court to direct the attention of the jury to any special feature of the defense, they should have asked the court to do so : Kehoe v. Traction Co., 187 Pa. 474 ; Jones v. Matheis, 17 Pa. Superior Ct. 220 ; Crawford v. Wittish, 4 Pa. Superior Ct. 585.

The obligation of a tenant does not extend to injuries which it was not in his power to prevent, and there is no obligation to restore or repair buildings which have been damaged without fault on his part : Earle v. Arbogast, 180 Pa. 409.

The landlord can recover for an injury to the freehold ; the tenant for an injury to the use or enjoyment : Devlin v. Snellenburg, 132 Pa. 186 ; Seely v. Alden, 61 Pa. 302.

Assignment 19 is purely technical, and does not go to the reversal of the judgment : Act of April 6, 1859, P. L. 381 ;

2 Purdon's Dig. (Stewart ed.), p. 1989 ; Maus v. Maus, 5 Watts, 315 ; Kelsey v. Murphy, 30 Pa. 340.

OPINION BY HENDERSON, J., February 25, 1907 :

One of the plaintiff's complaints was that the defendant wrongfully and injuriously constructed its works and negligently maintained and carried on its business, as a result of which the plaintiff's buildings were damaged.  No evidence of negligence was introduced, however, the plaintiff relying on testimony tending to establish the existence of a nuisance in the business which the defendant conducted.  There is also an averment that the atmosphere was made unwholesome and injurious to the plaintiff's tenants.  The latter charge, however, was eliminated from the case by the court, together with all the evidence relating thereto, the issue being confined to the inquiry whether the defendant maintained a nuisance and whether that nuisance was injurious to the buildings occupied by the plaintiff's tenants.  The plaintiff had been a resident of Marcus Hook for many years and was the owner of several houses which he rented.  The defendant, a New Jersey corporation, erected its works in the borough in 1902 and engaged in the business of refining Texas petroleum.  The plaintiff's allegation was that in the process of refining, offensive and noxious vapors were emitted which destroyed the paint upon the houses referred to, blackened the paper on their walls and corroded their metal roofs.  Many witnesses were called who testified to the presence of offensive vapors in the atmosphere which they attributed to the defendant's refinery.  They were not observed before the refinery was put in operation and the observation of the witnesses led them to believe that they were given out by the defendant's works.  Some of this evidence related to the effect of the vapors on the witnesses, themselves.  Other parts of the testimony had reference to this effect on the plaintiff's houses and other property in the vicinity.  None of it, however, was admitted by the court for any other purpose than to show the origin of the objectionable fumes and the deleterious effects of them.  Their existence might be proved both by the senses of the witnesses and their effect on the surrounding buildings and vegetation.  Neither jury nor counsel could have understood that the evidence was admitted for the

purpose of showing special damage to the witnesses or to other property than the plaintiff's. Evidence that immediately after the works were put in operation sulphurous fumes were thrown out which were observed by many persons living in the vicinity, that a corrosive precipitate, injurious to metals, was deposited from these fumes and that other property in the same neighborhood was affected in the same way as the plaintiff's, was directly in line with the complaint and tended to sustain the charge against the defendant that in carrying on its business it maintained a nuisance. The first six assignments of error except to the admission of evidence of this character. An examination of the testimony in the light of the complaint makes it clear that the evidence was admissible for the purpose stated. Living in an atmosphere pervaded by injurious vapors the witnesses were properly called to prove the existence of them and their pernicious effects; this for the purpose of relating the plaintiff's injury to the business carried on by the defendant. If, as is suggested in the appellant's argument, the defendant is at a disadvantage because of the number of persons there residing who have similar causes of complaint against the defendant and have a common interest in the result of the litigation, the fact is not one which changes the rules of evidence or excepts the defendant from the operation of the law which bears upon all alike. The doctrine is established by many cases that a corporation which is not invested with the right of eminent domain is liable to another who sustains special injury in person or property from the operation of its works: Pennsylvania Lead Co.'s Appeal, 96 Pa. 116; Gavigan v. Refining Co., 186 Pa. 604, and Farver v. American Car and Foundry Co., 24 Pa. Superior Ct. 579 are among the cases in which the principle is declared and applied. The injury complained of was peculiar and special to the plaintiff. It consisted in the destructive effects and depreciation in value consequent upon the fumes thrown off by the defendant's works. It was something more than the general inconvenience to which the whole community was subjected by reason of the character of the business carried on in the vicinity. So far as appears from the evidence the defendant's refinery was the only one there which was engaged in refining Texas oil and we may conclude from the evidence that it was the peculiar quality of this oil which caused the

trouble. The burden rested upon the plaintiff to satisfy the jury of the existence of the nuisance complained of and the evidence furnished abundant support to the verdict. It is not an answer to the plaintiff's charge to say that the defendant has erected extensive works at large cost and is engaged in the prosecution of a business useful to the public, and that the plaintiff's rights are subordinate to the larger interests of the defendant and the public. The defendant chose to locate its works in proximity to the plaintiff's property and to engage in a business which the jury has declared to be harmful to him. Neither the magnitude nor the importance of its business permits an invasion of the rights of another. "Whether it be the great corporation with its lead works or the mechanic with his tin shop the rule is the same: 'So use your own as not to injure another:'" Judge GORDON in Pennsylvania Lead Co.'s Appeal, 96 Pa. 116. If in the advancement of its own interests the defendant has trespassed upon the rights of the plaintiff it cannot justify such conduct by showing that it gives employment to a large number of men and is an important factor in the commerce of the state.

The plaintiff does not seek to recover damage for the injury to the tenants. His allegation was that there was a physical injury to the property. The damage was to the freehold and not to the tenants' occupancy. For such an injury the landlord may maintain an action notwithstanding the occupancy by a tenant: Devlin v. Snellenburg, 132 Pa. 186. There is no evidence that the tenants were bound to repair, and certainly no obligation rested on them to make reparation of the injury alleged to have been caused by the defendant: Earle v. Arbogast, 180 Pa. 409. The plaintiff is none the less entitled to recover even if he has not actually made the repairs. The value of his property is reduced to the extent of the injury whether he should determine to apply the amount of his damages to the improvement of his property or keep the money in his pocket. If his property had been wholly destroyed by the unlawful and injurious act of the defendant he would be entitled to compensation whether he rebuilt or not.

The declaration charged negligence, but it was not necessary that the plaintiff offer evidence in support of this averment. A nuisance is sufficiently charged and the question of negli-

gence is not necessarily involved: Hauck v. Tidewater Pipe Line Co., 153 Pa. 366; Stokes v. Penna. R. R. Co., 214 Pa. 415.

The learned trial judge did not undertake to review the evidence of the many witnesses who testified in the case, but the attention of the jury was directly and pointedly called to the matter at issue which the court said was a plain question of fact; did the fumes from the defendant's plant injure the plaintiff's property in a substantial manner? if it did, the defendant is liable for what it will cost to restore it. It is true the amount of the plaintiff's claim was stated, but there was no intimation from the court that that was the amount to which he was entitled; on the contrary the jury was particularly directed to take into consideration all the evidence bearing upon the question as to what would compensate the plaintiff for his loss. We think the charge is not obnoxious to the criticism that it presented the plaintiff's case more fully than the defendant's. Under no aspect of the case would the court have been justified in giving binding instructions for the defendant. There was evidence tending to support the claim set forth in the declaration and it was the duty of the court to submit the question of fact to the jury.

The objection to the addition of interest to the amount of the verdict is purely technical. The verdict carries interest and the defendant has, therefore, sustained no injury. In order, however, that the judgment may be had in conformity to the proper practice, judgment is now entered in favor of the plaintiff for the amount of the verdict, $1,250, with interest from the date of the verdict, November 3, 1905.

The assignments are all overruled and the judgment affirmed.