# Welliver v. Irondale Electric Light, Heat and Power Company, Appellant.

*Corporations—Light, heat and power company—Manufacture of electricity—Waters—Seepage—Eminent domain.*

1. A company organized for the purpose of supplying power for the manufacture of electricity to be used for public and private lighting, but without the power of eminent domain, must so conduct its business that a private nuisance shall not be created by percolation of water brought by an artificial water course upon its premises. Pennsylvania Coal Co. v. Sanderson, 113 Pa. 126, distinguished.

*Deed—Reservation—Seepage—Release.*

2. Where a grantor reserves to himself the right of maintaining a dam, and the right of carrying water in a race course "as at present enjoyed," free and clear from all liability to the grantee for loss by reason of the breaking away or overflowing of the race and dam, and subsequently executes a release to the grantee's successor in title of all claims or demands to any estate, right, title or interest in the land, the land so released is thereafter no longer subject to a seepage servitude.

*Negligence—Proximate and remote cause—Waters—Seepage.*

3. On an issue to determine damages to plaintiff's land by seepage and percolation, the case is for the jury where the evidence is conflicting as to whether the flow of water came by the natural level of the land from defendant's race course on to the plaintiff's land, or whether the injury was caused by the independent intervening agency of water flowing through drains constructed by a railroad company.

*Waters—Damage to land—Landlord and tenant—Injury to the reversion.*

4. A landlord may maintain an action for an injury to land notwithstanding the occupancy of the tenant, where he shows that he is in fact the owner of the land, and that in consequence of the acts and

omissions of the defendant, a stated number of the acres of the land were greatly injured and damaged, that his system of underdrains was flooded, and the land rendered unproductive and untillable for farming purposes.

*Waters—Injury to land—Measure of damages.*

5. In an action to recover damages for injuries to land by water, the trial judge cannot be convicted of error in saying that the plaintiff "is entitled to whatever you find under the evidence to be the cost of remedying the injury done by the act of the defendant, unless that cost will exceed the value of the property injured, and in such case the value of the property becomes the measure of damages."

6. In such a case a clearer instruction would be that it was the cost of restoring the property to its former condition, instead of the cost of remedying the injury, that would be the measure.

Argued March 6, 1908. Appeal, No. 2, Jan. T., 1908, by defendant, from judgment of C. P. Columbia Co., May T., 1906, No. 28, on verdict for plaintiff in case of Albertus W. Welliver v. Irondale Electric Light, Heat and Power Co. Before RICE, P. J., PORTER, HENDERSON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Trespass to recover damages for injuries to land. Before EVANS, P. J.

The facts are stated in the opinion of the Superior Court.

Defendant presented these points:

3. It appearing that the race way is maintained in the same condition it always has been since the time of its construction, and the seepage complained of is the natural seepage incident to the character of the soil through which it is constructed, and there being no evidence that the defendant has been guilty of any negligence in maintaining the said race way in the condition that it has always been maintained; and no evidence that the flow of water from said seepage has increased in quantity; and no evidence that the defendant has failed to take any proper precautions in maintaining and using the said race way, the plaintiff cannot recover. *Answer:* This point is refused. [1]

7. That under all the evidence in this case the verdict must be for the defendant. *Answer:* This point is refused. [2]

1. That it appearing from the evidence in this case that the

defendant company is the grantee of the title of the Bloomsburg Iron Company, with all the rights, powers and reservations of that company to maintain the race in question in the lawful use thereof for the production of power, and under the rights and reservations contained in the deeds of the said company to the predecessor in title of the plaintiff, it had the right to discharge the natural percolation and seepage from the race as then constructed and maintained by the Bloomsburg Iron Company into the ditch provided for said seepage at the time of its construction upon the land now occupied by the Bloomsburg & Sullivan Railroad Company and its right of way; and it appearing from the evidence uncontradicted that said old ditch was filled up by the said railroad company in the erection and construction of its roadbed, and that said old ditch was supplied by another ditch placed outside of the line of right of way of the said railroad company upon the plaintiff's land by the joint act of the said railroad company and the predecessor in title of the plaintiff; and it appearing further that the seepage which formerly flowed into and was carried away by the old ditch was and is directed by the said railroad company into the new ditch provided by it and E. W. M. Low, plaintiff's predecessor in title, and caused the damage complained of, such diversion is the act of a third party, to wit: the said railroad company, over which the defendant had no control, and the plaintiff cannot recover. *Answer:* This point is refused. [5]

6. The plaintiff having shown no permanent injury to the land, and the evidence showing that the land is in the possession of a tenant as cropper, and not in the possession of the plaintiff, the plaintiff cannot recover. *Answer:* This point is refused. [6]

If, under all the evidence in the case, and the law as we have instructed you, you should find that the plaintiff is entitled to damages, then we say to you that he should be awarded full and fair compensation or, in other words, he should be made whole, i. e., he is entitled to whatever you find under the evidence would be the cost of remedying the injury done by the act of the defendant, unless that cost will exceed the value of the property injured, and in such case the value of the property

becomes the measure of damages. In other words, if it would cost more to remedy the injury in this case, than the entire property alleged to be injured is worth, then you may assess the damages at the value of the entire property which it is alleged is injured.

As we view the facts in this case, the property injured would be whatever portion of the field north of the railroad right of way you may find is injured by the water which seeps through the embankment. [7]

[Again, it is contended by the defendant, that about 1885, if we remember correctly, certain changes were made upon the ground by the Bloomsburg & Sullivan Railroad Company and Dr. Low, the plaintiff's predecessor in title, which have resulted in leading the seepage from the race upon the plaintiff's land, and that any injury resulting therefrom is the result of the acts of these parties, over whom they have no control. We say to you that if the acts or omissions of the defendant are not the proximate cause of this water being cast upon the plaintiff's land, then the defendant is not liable for the injury, and you should so find, and your verdict should be for the defendant. But if it be true, as contended by the plaintiff, that in spite of the changes made by the railroad company and Dr. Low, this land was tillable before the defendant company turned its water into the race in the spring of 1903, and that by reason of the subsequent use of this headrace in the way it has used it, the water stored therein was allowed to seep through upon the plaintiff's land, and if such water would find its way to plaintiff's land independent of the drains under the railroad tracks, then the acts of Dr. Low or the railroad company, could not be set up as a defense by the defendant company.] [3]

Verdict and judgment for plaintiff for $863.75. Defendant appealed.

*Errors assigned* were (1–7) above instructions, quoting them.

*Grant Herring* and *N. U. Funk*, with them *S. P. Wolverton, S. P. Wolverton, Jr.*, and *James Scarlet*, for appellant.—Where

it is apparent on the face of things themselves that a certain servitude has been impressed upon the premises, then such subsequent purchaser is bound to take notice; and the law charges him with notice. He takes the property charged with that servitude just as though written in his deed: Sharpe v. Scheible, 162 Pa. 341; Koons v. McNamee, 6 Pa. Superior Ct. 445.

An easement may be created or reserved by an implied grant when its existence is necessary to the enjoyment of that which is expressly granted or reserved, upon the principle that where one grants anything to another, he thereby grants him the means of enjoying, whether expressed or not: 2 Washburn on Real Property, sec. 1231; Strickler v. Todd, 10 S. & R. 63; Gould on Waters, sec. 306; Pickering v. Stapler, 5 S. & R. 107; Swartz v. Swartz, 4 Pa. 353.

The owner of a dam is held responsible only for that degree of care, skill and diligence in its construction and maintenance which men of ordinary prudence are accustomed in similar cases to employ: Young v. Leedom, 67 Pa. 351; McCoy v. Danley, 20 Pa. 85; Monongahela Navigation Co. v. Coon, 6 Pa. 379.

Damages resulting to another, from the natural and lawful use of his land (in the development of the natural resources) by the owner thereof, are, in the absence of malice or negligence, damnum absque injuria: Penna. Coal Co. v. Sanderson, 113 Pa. 126; Strauss v. Allentown, 215 Pa. 96; Meixell v. Morgan, 149 Pa. 415; Penna. R. R. Co. v. Lippincott, 116 Pa. 472.

Where in an action of negligence the fact is undisputed in the evidence, that the injury received was inflicted by an intervening agency, over which the defendant had no control, the question of remote or proximate cause must be determined by the court and the jury instructed accordingly: South Side Pass. Ry. Co. v. Trich, 117 Pa. 390; Cooley on Torts (2d ed.), p. 91; McKenna v. Gas Co., 193 Pa. 633.

The true rule is compensation for the loss of crops, if any, and the cost of restoring the land to its former condition, unless that cost would exceed the value of the land, when the value of the land would be the limit of the damages: Hoffman v. Coal Co., 16 Pa. Superior Ct. 632.

*H. Mont Smith* and *Fred Ikeler,* for appellee.—A private corporation not having the power of eminent domain, and not engaged in the natural and necessary development of the land itself, but on the contrary maintaining an artificial water way, is liable for all injuries to an adjoining landowner, resulting from the conduct of its business, no matter how lawful that business may be, or how careful it may have been in carrying it on: Hauck v. Pipe Line Co., 153 Pa. 366; Robb v. Carnegie, 145 Pa. 324; Pottstown Gas Co. v. Murphy, 39 Pa. 257; Stokes v. Penna. R. R. Co., 214 Pa. 415; Green v. Sun Co., 32 Pa. Superior Ct. 521; Rogers v. Traction Co., 182 Pa. 473; Farver v. Car & Foundry Co., 24 Pa. Superior Ct. 579.

Even if the acts of the railroad company contributed to the injury that would not relieve the defendant company from its liability: Dennison v. R. R. Co., 21 Pa. Superior Ct. 248; Weir v. Plymouth Borough, 148 Pa. 556; Gallagher v. Kemmerer, 144 Pa. 509; Toole v. R. R. Co., 27 Pa. Superior Ct. 577.

It has been consistently held that in cases like the present the measure of damages is the cost of remedying the injury, unless such cost exceeds the value of the property injured, in which case the value of the property becomes the measure of damages: Welliver v. Canal Co., 23 Pa. Superior Ct. 79; Robb v. Carnegie, 145 Pa. 324.

OPINION BY RICE, P. J., February 26, 1909:

In this action of trespass the plaintiff claimed and recovered damages for injury to his land, caused by seepage and percolation of water through the embankment of the defendant's race.

1. The contention that the defendant cannot be held liable, in the absence of negligence, because the damages resulting to the plaintiff are the result of the defendant's lawful use of its own land and the development of the natural resources thereof, cannot be sustained. This race is an artifical water course; it is not maintained for the development of the natural resources of the land owned by the defendant, but for the purpose of supplying power for the manufacture of electricity, which is furnished to the town of Bloomsburg and the general public for

lighting, and it is not claimed that the company has the power of eminent domain. The business is that which the defendant company was chartered to carry on, it is lawful and it is conducted on the defendant's own land, but these facts, of themselves, do not absolve the company from the obligation so to conduct it that a private nuisance shall not be created by percolation of water brought by artificial means upon its premises. In Pottstown Gas Company v. Murphy, 39 Pa. 257, it was held that a gas company, not having the power of eminent domain, was answerable for consequential damages, such as the corruption of plaintiff's ground and well, by the percolation of fluids from the works, whether there was negligence or not. We quote from the opinion of Chief Justice LOWRIE: "But the defendants think that as a corporation, authorized by statute to carry on this business, and to purchase in fee simple such real estate as may be necessary for it, they are not answerable for such consequential damages as are complained of here. We cannot adopt this view. No such exemption is involved in the fact of incorporation, nor in the privilege of buying land. The principle they invoke applies only where an incorporation, clothed with a portion of the state's right of eminent domain, takes private property for public use on making proper compensation, and where such damages are not part of the compensation required." See also Rogers v. Philadelphia Traction Co., 182 Pa. 473; Green v. Sun Co., 32 Pa. Superior Ct. 521, and cases there cited. The doctrine of Pottstown Gas Co. v. Murphy was reaffirmed in Hauck v. Tidewater Pipe Line Co., Ltd., 153 Pa. 366, where it appeared that the defendant, a limited partnership, without the right of eminent domain, constructed a pipe line for the transportation of oil from the oil region, and that at the terminus of its line the oil was taken from the pipe and loaded upon tank cars for transportation by railroad. The defendant's improvements, erected for the purpose of storing and shipping their oil, were entirely upon their own land, and separated from the plaintiff's land by railroad tracks and a public road. The plaintiff introduced evidence which tended to show that oil escaped from defendant's pipes, percolated through the ground, and injured his springs and lands, de-

stroyed the fish in a mill pond, and rendered a tenant house uninhabitable. Upon this state of facts the plaintiff was permitted to recover and the judgment was affirmed. The decision is peculiarly pertinent because Chief Justice PAXSON clearly points out the distinction between such a case as we have before us and Pennsylvania Coal Co. v. Sanderson, 113 Pa. 126, and fully answers the arguments presented by appellant's counsel as to the applicability of the principle of the latter case. After stating that in the Sanderson case the flow of mine water was the natural and necessary result of the development by the owner of his own property, he said: "This was not the case in Robb v. Carnegie, 145 Pa. 324, nor is it the case here. In Robb v. Carnegie the refuse coal which was used for making coke was not mined upon the premises of the company, but was brought from other mines at a distance. In the case in hand the oil which was the cause of the injury to the plaintiff's property was brought from a distance, allowed to escape from the pipes, and to percolate through plaintiff's land and destroy his springs. It was not in any sense a natural and necessary development of the land owned by the company." And in conclusion he said: "In the consideration of this class of cases, care must be taken to distinguish between the natural and necessary development of the land, and injuries resulting from the character of some business, not incident and necessary to the development of the land, or the minerals or other substances lying within it." It is not necessary for us to say more upon this branch of the appellant's argument because it is as plain as anything can be that the case before us belongs to the latter and not the former class.

2. In order to give a correct understanding of the question raised by the defendant's contention that the plaintiff's land was, at the time of the injury complained of, subject to a seepage servitude, it will be necessary to refer at some length to the facts. The Bloomsburg Iron Company, formerly the Bloomsburg Railroad & Iron Company, was incorporated in 1839, and shortly thereafter erected large blast furnaces, and constructed the race in question upon its own land for the purpose of bringing water from Fishing creek to operate them. In 1858 the

company conveyed its land immediately north of the race to one Shafer, subject, however, to certain reservations, and his executors in 1882 conveyed 141 acres of the same to Dr. Low, the plaintiff's immediate predecessor in title. In the deed from the company to Shafer the company reserved to itself, its successors and assigns, the iron ore in the premises and the right to mine the same, as well as other rights not necessary to be noticed here, and the right (1) to maintain and continue its furnace dam where it was then erected; (2) to convey the water from Fishing creek "through, upon and over the said premises in their furnace race as at present enjoyed" by the grantor; (3) to enter upon said premises to repair, reconstruct and rebuild the race and dam, or either of them; (4) to be free and clear from all liability to Shafer, his heirs and assigns, for loss or damage, either directly or indirectly, by reason of the breaking away or overflowing of the race and dam or either of them. The same reservations were contained in the deed from Shafer's executors to Low.

Originally a ditch was constructed along the base of the race on the north side, for the purpose of receiving the natural percolations and seepage therefrom and carrying them to Fishing creek, and, as we understand the evidence, this condition remained unchanged in 1858, when Shafer bought, as well as in 1882 when Low acquired his title. But in 1886 the Bloomsburg & Sullivan Railroad Company appropriated a strip of Low's land alongside the race for its right of way, and about that time constructed its railroad thereon. In the construction of its road the railroad, it is claimed, filled up the old ditch, and by means of drains constructed at intervals under its track carried the seepage and percolations from the race to a new ditch, along the edge of its right of way, but on the land of Dr. Low.

The next event in chronological order, the conditions as above described being then unchanged, occurred in March, 1889, when the Bloomsburg Iron Company executed and delivered to Low the deed of release that figures so prominently in the case. This deed, after reciting the conveyance to Shafer in 1858, and the conveyance by his executors to Low in 1882, subject to the

exceptions and reservations therein mentioned, proceeded to "remise, release and forever quit claim unto the said E. W. M. Low, and to his heirs and assigns all the right, title and interest whatsoever of the said The Bloomsburg Iron Company, by reason of the aforesaid exceptions and reservations mentioned in the deed hereinbefore recited and all the estate and estates shares purpart and dividends, right title interest property, claim and demand whatsoever of the aforesaid corporation the said The Bloomsburg Iron Company in law or equity or other use howsoever of into about of all that messuage, . . . . in the actual possession and seisin of the said E. W. M. Low now being bounded and limited as follows:" Here follows a description by courses and distances, which, as we understand, embraces all of the land conveyed to Low excepting that part appropriated by the Bloomsburg & Sullivan Railroad Company for its right of way. Then follows the habendum which concludes: "so that neither the said, The Bloomsburg Iron Company nor its successors or assigns nor any other person or persons, whosoever lawfully claiming to claim by, from or under it the said The Bloomsburg Iron Co., or its successors or assigns shall or may at any time or time hereafter have claim challenge or demand any estate right title or interest of, into or out of the said messuage, tenements, hereditaments, and premises hereby remised and released or mentioned or intended so to be with the appurtenances or any part or parcel thereof, but thereof and therefrom shall and will be utterly excluded and forever debarred by these presents."

Counsel agree that Shafer, and following him Low, took the land embraced in their deeds subject to the easement of seepage, but the supplemental briefs show that they differ as to the origin of the easement. The defendant's counsel contend that it was not expressly nor impliedly created by the reservations contained in the deeds, but rests exclusively upon the well-recognized principle that where an owner of land subjects part of it to an open, visible, permanent and continuous servitude in favor of another part, and then aliens either, the purchaser takes subject to the burden or the benefit as the case may be: Grace M. E. Church v. Dobbins, 153 Pa. 294; Liquid Carbonic Co.

v. Wallace, 219 Pa. 457; Koons v. McNamee, 6 Pa. Superior Ct. 445. The plaintiff's counsel, while not denying that this principle would have been applicable to the case at the time of the conveyance to Shafer and Low, even in the absence of the reservations in their deeds, contend that the parties did not leave the matter wholly to implication, but that when the Bloomsburg Iron Company sold to Shafer and expressly reserved to itself "the right of maintaining and continuing their furnace dam where it is now erected," and "the right of carrying or conveying the water from Fishing creek over, upon and through the said premises in their furnace race as at present enjoyed," it reserved by necessary implication the right of seepage upon the land conveyed to Shafer, to the extent that was then apparent upon the ground. We are inclined to the opinion that this is the better view; and if it be the correct construction of the reservations, then the release by the Bloomsburg Iron Company to Low of all the right, title and interest of the iron company in the land described in the release, "by reason of" the exceptions and reservations mentioned in the deeds to Shafer and Low, discharged the land described in the release from the easement. But even if the foregoing construction of the reservations be doubtful, the same result is reached by giving effect to the plain, unequivocal and comprehensive words of the habendum above quoted. It is true the narrow strip of land alongside the race bank, embraced within the right of way of the railroad company, is not included in the land described in the release, and therefore was not affected thereby. Assuming that notwithstanding the appropriation of this strip by the railroad company it still was subject to the easement of seepage, the plain import of the release is that it should extend no further. Viewing that instrument as a whole, we entertain no doubt that its intention and effect were to discharge the land described therein from the burden of receiving, directly or indirectly, the seepage and percolations from the defendant's race.

3. The next question to be considered is that of proximate cause. About the year 1890, the Bloomsburg Iron Company ceased to operate its furnaces, and in 1902 conveyed its title

and rights to the defendant company. For several years prior to 1903, when the defendant company cleaned out the race and resumed its use for conducting water to its power plant, there had been very little water in the race, and very little, if any, seepage therefrom. In the meantime, the plaintiff's evidence tends to show, Dr. Low ditched his land and was able to cultivate and raise crops upon it down to the edge of the ditch thereon heretofore spoken of alongside the railroad company's right of way. But since 1903, the plaintiff's evidence also tends to show, the water seeping and percolating from the race embankment has constantly found its way to the plaintiff's land north of the railroad, either through the pipes constructed by the railroad or the gravel and porous soil underlying its tracks, and has rendered several acres of his land boggy, swampy and unfit for cultivation. Plaintiff claimed and adduced evidence tending to show that owing to the natural level of the land the water would reach the plaintiff's land regardless of the pipes, drains or constructions of the railroad company. The defendant on the other hand claimed that the injury resulted from the acts of the railroad company in closing the old ditch on the southern side of its track and conveying the water to the ditch on the plaintiff's land on the northern side of its right of way.

It has been generally held that in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligent or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances. The rule as stated in Hoag v. Railroad Co., 85 Pa. 293, which has been more frequently adopted in the Pennsylvania decisions than any other, is: "Was the injury the natural and probable consequence of the negligence,—such a consequence as under the surrounding circumstances might and ought to have been foreseen by the wrongdoer as likely to flow from his acts?" There can be no doubt under the evidence in the present case that the defendant had knowledge of the course the water would take that percolated through its race embankment. And if, as the evidence adduced by the plaintiff tends to show, the injury was

not caused by the mere flowing of the water through the drains constructed by the railroad company, but, owing to the natural level of the land and other natural conditions, the water would have found its way to the same place and produced the same injury as is now complained of, it cannot be said that the injury was caused by an independent intervening agency, and that therefore the defendant was not responsible: Weir v. Plymouth Borough, 148 Pa. 566. Under the conflicting evidence the question was for the jury, and was submitted with appropriate instructions.

4. By the defendant's sixth point the court was asked to instruct the jury that the plaintiff having shown no permanent injury to the land, and the evidence showing that the land was in the possession of a tenant as a cropper, and not in the possession of the plaintiff, the plaintiff could not recover. This point was properly refused. In his statement of claim the plaintiff alleged his ownership of the land and that in consequence of the acts and omissions of the defendant eight acres of his land were greatly injured and damaged, that his system of under-drains was flooded, and the land rendered unproductive and untillable for farming purposes. We cannot agree with defendant's counsel that under this statement it was not competent for the plaintiff to recover damages to his reversion, if the evidence warranted such recovery. As was said in Green v. Sun Co., 32 Pa. Superior Ct. 521, so it may be said here, "His allegation was that there was a physical injury to the property. The damage was to the freehold and not to the tenant's occupancy. For such an injury the landlord may maintain an action notwithstanding the occupancy by a tenant: Devlin v. Snellenburg, 132 Pa. 186." That such injury as was shown by the evidence on behalf of the plaintiff is an injury to the freehold, and not merely an interference with the tenant's use and occupancy, is beyond question. The case of Ripka v. Sergeant, 7 W. & S. 9, is directly in point.

5. The remaining question to be considered is as to the measure of damages. No assignment of error raises any question as to the competency of the evidence admitted on that subject. So far as this branch of the case is concerned, the sole complaint

is that the learned judge erred in the instructions complained of in the seventh assignment of error and particularly that part of them in which the learned judge said: "He is entitled to whatever you find under the evidence would be the cost of remedying the injury done by the act of the defendant, unless that cost will exceed the value of the property injured, and in such case the value of the property becomes the measure of damages." It cannot be said that this instruction was erroneous; indeed, it is in the language of more than one decision of the appellate courts. Doubtless it would have been clearer if the court had said to the jury that it was the cost of restoring the property to its former condition instead of the cost of remedying the injury, that would be the measure. If such instruction had been requested it would have been the duty of the court to give it: Keats v. Gas Co. of Luzerne County, 29 Pa. Superior Ct. 480. But no such request was made, and viewing this portion of the charge as a whole and in connection with the context, we feel confident that the jury were not misled. The fact that the doing of that which would remedy the injury and restore the property to its former condition would also prevent a recurrence of the injury is not ground for holding that the cost of doing that would not be a proper measure of damages, unless it exceeded the value of the land.

Upon a full review of the case we discover no error of which the defendant can justly complain.

The judgment is affirmed.