# Hauck v. Tidewater Pipe Line Co., Ltd., Appellants.

[Marked to be reported.]

*Consequential damages—Nuisance—Negligence—Corporations.*

Where a corporation is clothed with the right of eminent domain, and is expressly authorized by law to construct its works and operate them, any injury resulting from such operation, without negligence and without malice, is damnum absque injuria; but where a corporation has no right of eminent domain, the operation of its works, causing consequential injuries to another, is a nuisance.

*Rule of Robb v. Carnegie.*

Where an owner of land prosecutes a business which has no necessary relation to the land itself, and is not essential to its development, he is liable for consequential injuries done to the property of another.

Where a pipe line company carries oil from a distance, allows it to escape from the pipes, and to percolate through another's land and destroy his springs, the company is liable in damages for the injury.

Pottstown Gas Co. v. Murphy, 39 Pa. 257, and Robb v. Carnegie, 145 Pa. 324, applied; Pa. Coal Co. v. Sanderson, 113 Pa. 126, distinguished.

*Assignments of error to admission of evidence.*

An assignment of error to the admission of evidence which fails to set forth the evidence admitted under the exception, is improper, and will not be considered by the supreme court.

Argued Feb. 14, 1893. Appeal, No. 49, Jan. T., 1893, by defendant, from judgment of C. P. Schuylkill Co., May T., 1887, No. 21, on verdict for plaintiffs, Henry Hauck and wife, in right of wife. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS and McCOLLUM, JJ.

Case for injuries to land, springs and fish pond.

At the trial before PERSHING, P. J., it appeared that defend-

ant, a limited partnership, without the right of eminent domain, constructed a pipe line for the transportation of oil from the oil region, and that at the time this suit was brought, March 7, 1887, the terminus of its line was at a point in Schuylkill county. At that point the oil was taken from the pipe and loaded upon tank cars for transportation by railroad. Defendant's improvements, erected for the purpose of storing and shipping their oil, were entirely upon their own land, and separated from plaintiff's land by the railroad tracks and by a public road. Plaintiff introduced evidence which tended to show that oil escaped from defendant's pipes, percolated through the ground, and injured his springs and lands, destroyed the fish in a mill pond, and rendered a tenant house uninhabitable.

Defendant's points were among others as follows:

" 2. The measure of damages sustained by plaintiff is the loss of rents for the tenant house so long as the coal oil shall render it unfit for occupation. (2) The loss in destroying the productive power of his field until such time as it will be restored to its former condition. (3) The inconveniences and loss by being deprived of the use of their springs and streams of water while the same continue unfit for use. (4) The value of the fish in the milldam destroyed by the coal oil as testified to by witnesses. *Answer :* We affirm this, referring to what we shall further say on the subject of damages, keeping in mind that the damages must have accrued before the 7th of March, 1887, how far the productive power of the land was destroyed at that time, the condition it was in on the 7th of March, 1887, compared with the condition it was in on the 7th of March, 1881, six years before." [4]

" 4. That the defendant is not liable for damages resulting from its business by reason of oil escaping from its own lands where it is being handled, except such oil escapes through negligence of the company or its agents. *Answer :* We will answer this in the negative, saying to you, as has been said by our Supreme Court, in the case of the Pottstown Gas Co. v. Murphy, 39 Pa. 263, that the question is one of nuisance and not of negligence. ' The court was right in saying that this is not a question of negligence but of nuisance. The defendants think that as a corporation [this company is a quasi corporation simply], authorized by statute to carry on this business,

and to purchase in fee simple such real estate as may be necessary for it, they are not answerable for such consequential damages as are complained of here'—this was destroying a well. 'We cannot adopt this view. No such exemption is involved in the fact of incorporation, nor in the privilege of buying land. The principle they invoke applies only where an incorporation, clothed with a portion of the state's right of eminent domain, takes private property for public use on making proper compensation.' [5]

" 8. Nor is the defendant liable for injuries which result from accidents in carrying on their business with reasonable care, and if the leak at the end of the bed pipe in 1886 was due to unavoidable causes such as expansion or contraction, having been originally properly capped and leaded, the defendant is not liable for any injury done to the plaintiff by reason of the oil escaping through such leak, if the defendant used due diligence in discovering and stopping the leak when it was known there was a break in their pipes. *Answer :* We negative this in the terms in which it is put. We do not say to you as a matter of law that expansion or contraction was an unavoidable cause of that leak. It is well known that iron will expand in hot weather and contract in cold ; and so far as we understand, in laying railroad tracks, that is always taken into account when the track is laid, the expansion and contraction at different seasons in the year, and has to be provided for the same as anything else in the business." [6]

" 9. If the whole of the injury to the plaintiff's house, springs and land arose from the accidents in 1884 and 1886, then the verdict of the jury must be for the defendant. *Answer :* We answer this as a whole in the negative. We have already said that for the loss of oil caused by the wreck the defendant company ought not to be held responsible. We do not think any of the witnesses have testified that the leak in the bed pipe was an accident." [7]

" 11. That to recover any damages against the defendant, the plaintiff must prove that the defendant was guilty of negligence, and negligence must be proved and not assumed. Negligence is want of reasonable care, and if the jury find that the oil which flowed upon the plaintiff's land was oil that escaped by the acts of persons not in the employ of the company

defendant, or escaped while the defendant was exercising reasonable care, the verdict must be for the defendant." Refused. [8]

"15. That damages can be recovered in the action only up to the 7th of March, 1887, if the jury should find the defendant caused any damages to the tenant house, springs or land by loss of crops of the plaintiff by the negligence of their agents. And if the jury find that the defendants have carried on their business with reasonable care the verdict of the jury must be for the defendants." Refused. [9]

The court charged in part as follows :

["In explanation of these answers we will call your attention briefly to the rules of law governing cases of this kind. You will observe that the defendant here occupied its own land. It did not occupy with its business any portion of the land of the plaintiff. The rule upon the subject is that 'although a person may do any act upon his own land, and make any erections there which do not violate the rights of his neighbor, and to this extent has full dominion over his premises, and their uses, yet he has no right to make any erection there, a consequence of which is an invasion of the legal right of his neighbor, and if he does make such use of his property, he does it at his peril, and no degree of care or skill on his part exercised to prevent injury will be of any avail to him as a defence, if injury actually results from the act. The act being of a character which may create a nuisance, he is liable for all the injurious consequences that flow therefrom.' An action cannot be maintained as a rule until the injury is evident. 'Therefore, whilst a person may erect a building upon the line of his land, yet he is bound at his peril to do it in such a manner that the water or snow and ice from its roofs shall not fall upon his neighbor's land, or even upon his own, in such a manner as to escape upon his neighbor's land in larger quantities or greater volume than would go there if no erection had been made.' Wood on Nuis. § 108.

"It has been laid down in a large number of cases that 'every person who, for his own profit or advantage brings upon his premises, and collects and keeps there anything which, if it escapes, will do damage to another, is liable for all the consequences of his acts, and is bound at his peril to confine it and

keep it upon his own premises. If he does not, he is answerable for all the damages that result therefrom, without any reference to the degree of care or skill exercised by him in reference thereto. Therefore if a man brings water upon his premises by artificial means and collects and keeps it there in reservoirs or pipes, he is bound at his peril to see that the water does not escape to the damage of the adjoining owner.' Otherwise a party's land might be taken from him without compensation. Ib. § 115.

"If the mere fact that the business is a lawful business and has been conducted with care would be a defence where a neighbor's land had been injured in consequence of the business carried on there, the escape of gas, for instance, or the escape of oil, the result would be that a man might lose his farm; might be compelled to leave it and have no compensation, simply because the business which brought about this loss was a lawful business and was carried on carefully. That is not the law. No man's property can be taken, directly or indirectly, without compensation, under the law of this state. Hence there are cases, and a great many of them, where a defendant is held liable in damages, although his business is lawful, and he has exercised care in carrying it on.

"A business which is visibly injurious to vegetation by preventing its growth, or seriously injuring or destroying it, or that produces a visible damage on other property, may be a nuisance, even though it does not render the enjoyment of life less comfortable or produce any ill effects on the occupants of surrounding premises. So it has been held that a gas company is bound to keep its pipes in good order and not permit the gas to escape. If it does, it is liable in damages. Wood on Nuisances, § 3.

"It is held in Wharton on Negligence, § 954, that 'A gas company is bound to be diligent in the structure and repairing of its pipes, which must be kept free from leakage, in the structure and repairing of its tanks and other apparatus. For these purposes the company is bound to keep on hand a body of operatives sufficient for the ordinary contingencies of damage.'

"A party who makes erections on his own land which become an invasion of the legal rights of his neighbor, does so at his peril, and no skill or care will be a defence. The party

whose land is invaded in this way is not bound to build an embankment, for instance, to keep off the water that his neighbor throws upon him illegally; he is not bound to make an embankment to prevent this precipitation or unusual flow of water from his neighbor's premises on his own. The aggressor can never say that it was the duty of the assailed to ward off a blow unlawfully aimed at him. It is the duty of the party not to invade his premises in that way. Wood, § 121.

" Of course, the plaintiff in every case of this kind cannot by his own act contribute to increase the damages that may be inflicted upon him. He must conduct himself in a reasonable way, but he is not bound to build an embankment to keep the water off that his neighbor unjustly throws upon him. He is not bound in anticipation of a flow of gas or oil to undertake to build a barricade against it. It is the duty of the party not to invade his premises. That a plaintiff might have abated a nuisance, and did not, will not prevent his recovery, and will not necessarily mitigate his damages. It would depend on circumstances.

" The owner of oil stored in large quantities near a spring of water cannot resist a claim for damages by its leakage to the spring by the pollution of the underground currents of water that feed the spring, because he did not know the water was affected by it when the oil could be seen in puddles outside the building in which it was stored. Kinnaird v. Standard Oil Co. (Ky.), 7 L. R. Annotated, 451.

" These are the general rules of law upon the subject. You will take this case into your careful consideration. It has occupied considerable time. It is important to both parties. Determine, in the first place, whether the plaintiff has been injured by the business of the defendant, although conducted upon its own ground. If so, to what extent. What damages is she reasonably entitled to—compensation, not punishment—reasonable damages for any loss she has sustained. If you come to the conclusion that she has sustained no damage, your verdict would then be for the defendant."] [10]

Verdict and judgment for plaintiffs for $1,052. Defendants appealed.

*Errors assigned* were (1–3) admission of evidence, quoting bills of exception but not evidence; (4–10) instructions, quoting them as above.

*James Ryon,* for appellant.—The injury to fish should not have been considered as an element of damage : Reynolds v. Com., 93 Pa. 458 ; Darlington on Personal Property, 29 ; Wallis v. Mease, 3 Bin. 546 ; Shrunk v. Schuylkill Nav. Co., 14 S. & R. 83.

The damages were remote and speculative. As the injury could have been avoided by reasonable precautions, plaintiffs were not entitled to recover : Loker v. Damon, 17 Pick. 284 ; 2 Parsons, Cont. 464, § 5 ; Sedgwick, Damages, 5th ed., 101.

As appellants' land owed no servitude to appellees' land, unless they were guilty of negligence or malice in conducting their own business by reason of which the subterranean waters in their own lands were polluted, which might percolate to appellees' land, the damage, if any, was damnum absque injuria : Wheatley v. Baugh, 25 Pa. 528 ; Pa. R. R. v. Marchant, 119 Pa. 559 ; Keiser v. Gas Co., 143 Pa. 289 ; Collins v. Chartiers Gas Company, 131 Pa. 143 ; Haldeman v. Bruckhart, 45 Pa. 514 ; Lybe's Ap.; 106 Pa. 634 ; Pa. Coal Co., v. Sanderson, 113 Pa. 136 ; Greencastle v. Hazelett, 23 Ind. 186 ; Dillon v. Acme Oil Co., 49 Hun, 565 ; Marshall v. Welwood, 38 N. J. Law, 339 ; Garland v. Towne, 55 N. H. 57 ; Angell on Watercourses, 336 ; Washburn on Easements, §§ 3, 7 ; Jones v. R. R. Co., 27 Vt. 399.

Pottstown Gas Company v. Murphy, 39 Pa. 257, was a case into which the question of negligence or no negligence did not enter, because defendant's acts amounted to a nuisance, the injury inflicted upon plaintiff being the direct and necessary consequence of defendant's operations.

Plaintiffs' land was not injured directly by the business defendants were carrying on, but by the oil escaping on defendants' ground and percolating through it into plaintiffs'. This is a consequential injury, and in a general sense the oil in plaintiffs' land is a nuisance, but in a legal sense it is not a nuisance, because intervening agencies carried the oil through the subterranean water courses into the land of plaintiffs. Strawbridge v. Phila., 2 Penny. 419, is in point. Rhodes v. Dunbar, 57 Pa. 274, is to the same effect.

*George M. Roads, J. W. Roseberry* with him, for appellees. —If a man brings water upon the premises by artifical means

and collects and keeps it there, either in reservoirs or pipes, he is bound, at his peril, to see that the water does not escape to the damage of the adjoining owner, otherwise a party's land might practically be taken from him without compensation: Wood, Nuis. § 115.

The court treated the case as one of a class of nuisance cases to which belong The Pottstown Gas Co. v. Murphy, 39 Pa. 259; Robb v. Carnegie, 145 Pa. 324; Lentz v. Carnegie, 145 Pa. 612, and in the light of the cases, the answers to the points and the charge were clearly right: Robb v. Carnegie, 145 Pa. 324.

The main ground of the decision in the Sanderson case was that of necessity; the company must operate its land where the land lies; and not to allow the accidulated water, which nature created, to be removed and deposited in the natural water channels would stop the development of the property and in one sense reverse the rule " sic utere tuo," etc.

Huckestine's Ap., 70 Pa. 102, also was a case of the owner making a reasonable use of a bed of fire clay deposited on his land, and is not in point.   It was also an equitable proceeding for an injunction.

Pa. R. R. v. Lippincott, 116 Pa. 472, and R. R. v. Marchant, 119 Pa. 559, are cases, not between two private persons, but private individuals and a corporation clothed with the power of eminent domain, and it is settled law they have no application to the class of nuisance cases to which Robb v. Carnegie and plaintiffs' case belong.

OPINION BY MR. CHIEF JUSTICE PAXSON, February 27, 1893:

We will not consider the first three specifications of error, for the reason that they do not conform to the rules of court. We have made similar announcements so often within the last two or three years that it is difficult to understand why more attention is not paid to it.

The fifth specification alleges that the court below erred in declining to affirm the defendant's fourth point.   The point was as follows :

" That the defendant is not liable for damages resulting from its business by reason of oil escaping from its own lands where

it is being handled, except such oil escapes through negligence of the company or its agents."

This point presents the main feature of the case. The court below refused it upon the ground, that it was a question of nuisance, and not of negligence, citing Pottstown Gas Company v. Murphy, 39 Pa. 257, in support of this view. In that case it was held that the gas company was answerable for consequential damages, such as the corruption of the plaintiff's ground and well, by the fluids percolating from the works; and that a corporation is exempt from consequential damages only where, being clothed with the state's right of eminent domain, it takes private property for public use, upon making proper compensation, and where such damages are not part of the compensation required.

We think the learned judge was right, under the authority above cited, in holding that this was not a case of negligence, but of nuisance or of consequential damages. For this reason we think that the case of The Railroad Company v. Lippincott, 116 Pa. 472, and of Railroad Company v. Marchant, 119 Pa. 559, have no application. The railroad companies in those cases were clothed with the right of eminent domain, and were expressly authorized by law to construct their roads and operate them. It was held, therefore, that any injury resulting from such operation, without negligence and without malice, was damnum absque injuria. In the case in hand the company was clothed with no such powers. We think the case closely resembles that of Robb v. Carnegie, 145 Pa. 324, in which it was held that the owners of coke ovens, the gases from which injured the growing crops upon the adjoining farm, were liable in damage to the owner of said farm for such injury. An attempt was made in that case, as it has been made in this, to bring it within the doctrine of Pennsylvania Coal Company v. Sanderson, 113 Pa. 126. In the latter case the injuries complained of were the natural and necessary result of the development by the owner of the resources of his own land. In opening a drift for the purpose of mining coal, the mine water, impregnated with the impurities which it had taken up from the earth, coal and other minerals in the mines, either flowed from the mouth of the drift, or was pumped from the mines, and allowed to take its natural course on its way to the ocean.

It will thus be seen that the flow of mine water was the natural and necessary result of the development by the owner of his own property. This was not the case in Robb v. Carnegie, nor is it the case here. In Robb v. Carnegie the refuse coal which was used for making coke was not mined upon the premises of the company, but was brought from other mines at a distance. In the case in hand the oil which was the cause of the injury to the plaintiffs' property, was brought from a distance, allowed to escape from the pipes, and to percolate through plaintiffs' land and destroy his springs. It was not in any sense a natural and necessary development of the land owned by the company.

The appellants attempted to distinguish this case from Robb v. Carnegie by the fact that in the latter case the smoke and gases from the works were carried by the wind and lodged upon the plaintiffs' land; while in the latter case the escaping oil merely percolated through the soil until it reached plaintiffs' springs. The essential difference between being carried through the air and percolating through the soil has not been made to appear. We regard it as a distinction without a difference.

As was correctly said by the learned judge in a portion of his charge, embraced in the tenth specification: "If the mere fact that the business is a lawful business, and has been conducted with care, would be a defence where a neighbor's land had been injured in consequence of the business carried on there, the escape of gas for instance, or the escape of oil, the result would be that a man might lose his farm; might be compelled to leave it, and have no compensation, simply because the business which brought about this loss was a lawful business, and was carried on carefully. That is not the law. No man's property can be taken, directly or indirectly, without compensation under the law of this state. Hence, there are cases, and a great many of them, where a defendant is held liable in damages, although his business is lawful, and he has exercised care in carrying it on."

In the consideration of this class of cases, care must be taken to distinguish between the natural and necessary development of the land itself, and injuries resulting from the character of some business, not incident and necessary to the development

of the land, or the minerals or other substances lying within it. The owner of the land has the right to develop it by digging for coal, iron, gas, oil, or other minerals, and if in the progress of this development an injury occurs to the owner of adjoining land, without fault or negligence on his part, an action for such injury cannot be maintained. If this were not so a man might be utterly deprived of the use of his property. It is not so where the injury is caused by the prosecution of a business which has no necessary relation to the land itself, and is not essential to its development.

Judgment affirmed.