## Abraham, Appellant, *v.* Yardum.

*Trespass—Water pipe—Private owner of pipe—Leak from pipe in street.*

Where an owner of a lot in a city without objection on the part of the city constructs at his own cost a water pipe under the cartway of a street to connect a city main with his own property, and the water escapes from the pipe to the injury of adjacent owners, such owners cannot recover damages from the owner of the pipe, unless they show negligence in its construction or maintenance.

Argued April 21, 1915.   Appeal, No. 122, April T., 1915, by plaintiffs, from judgment of C. P. Allegheny Co., Oct. T., 1912, No. 1638, on verdict for defendants in case of Emilie R. Abraham, et al., Guardian of George W. Heer, et al., v. H. B. Yardum and Virginie H. Yardum, his wife.   Before RICE, P. J., ORLADY, HEAD, HENDERSON and TREXLER, JJ.  Affirmed.

HEAD, J., dissents.

Trespass to recover damages for injuries to property from leakage from a water pipe. Before DAVIS, J.

The facts are stated in the opinion of the Superior Court.

The court gave binding instructions for defendants.

Verdict and judgment for defendants.

*Error assigned* was in giving binding instructions for defendants.

*J. Garfield Houston,* for appellants.—Even if the municipality did grant its consent to the defendants to lay a pipe in the street, yet the liability of individuals acting under such consent for private purposes, is not the same as that of the municipality when it uses the streets for public purposes: Gordon v. Ellenville, Etc., R. R. Co., 195 N. Y. 137.

A municipality may allow a private individual to use a public street for a private purpose, and such consent will prevent the act of the individual from being unlawful and a nuisance per se; yet such consent does not confer upon the individual the limited liability of the municipality when injury results from the act: Mairs v. Manhattan Real Estate Association, 89 N. Y. 498; Turner v. Degnon-McClean Contracting Company, 99 App. Div. (N. Y.) 135.

The wrong committed by the defendants against the plaintiffs may be considered either as a trespass or as a nuisance: Hauck v. Pipe Line Co., 153 Pa. 366; Welliver v. Irondale Electric L., H. & P. Co., 38 Pa. Superior Ct. 26; McKnight v. Denny, 198 Pa. 323; Hay v. Cohoes, 2 N. Y. 159; Mairs v. Manhattan Real Est. Assn., 89 N. Y. 498; Wheeler v. Norton, 86 N. Y. Supp. 1095.

It is not necessary to show negligence to charge the defendants with nuisance.

The ruling cases in Pennsylvania are: Hauck v. Tidewater Pipe Line Co., 153 Pa. 366; Stokes v. P. R. R. Co., 214 Pa. 415; Welliver v. Irondale, Etc., Co., 38 Pa. Superior Ct. 26.

225, (1916).]    Arguments—Opinion of the Court.

*Edward G. Hartje,* for appellees, cited: Fritsch v. Allegheny, 91 Pa. 226; The Penna. Co. v. Sanderson, 113 Pa. 126: Kibele v. Philadelphia, 105 Pa. 41; Koelsch v. Philadelphia Co., 152 Pa. 355; Rumsey v. Philadelphia, 171 Pa. 63.

OPINION BY HENDERSON, J., October 9, 1916:

The material facts out of which the plaintiff's action arises are not controverted. The defendants owned a lot abutting on St. Clair street in the City of Pittsburgh near the intersection of that street with Eva street. A former owner of the premises laid a pipe which was connected with the city water line on the latter street through which water was supplied to the plaintiffs' house and another house in the immediate vicinity. This service pipe extended from the city water line under the cartway of Eva street for about one hundred feet and thence into the premises now owned by the defendants. The plaintiffs owned property abutting on Eva street in front of which the defendants' water pipe was laid. · Several years after the water pipe was placed a sewer was constructed for the joint use of plaintiffs and was connected with the city sewer under the cartway of Eva street. This sewer was about six feet under the water pipe which pipe was about four feet below the surface of the street. The street was paved with asphalt. In the winter of 1909 and 1910 water came through the sewer into the plaintiffs' cellars and efforts were made by them to locate the trouble. Finally they had the sewer opened up and found there was a leak in the lead pipe which supplied the defendants with water and that the water from this pipe had caused the earth to settle under the sewer or had washed a part of it away so that the sewer settled and broke at that place. Up to this time the plaintiffs did not know what the cause of the trouble was nor had the defendants knowledge that there was any defect in the water line or the sewer. As soon as the condition of the pipe was discovered the defend-

ants caused the water supply to be cut off and a new service to be established from St. Clair street. The plaintiffs' action was brought to recover for damage caused by the failure of the defendants to properly repair and maintain the water line by reason of which failure and by reason of the negligence of the defendants in not properly maintaining and repairing and in permitting the water to flow from the pipe the plaintiffs were injured. The learned trial judge gave binding instructions for the defendants on the ground that there was no evidence of any want of care on the part of the defendants in relation to the water pipe and that they were not charged with any different degree of care from that resting on a municipality or water company supplying residents of the city with water. The evidence warrants the conclusion that the service pipe was placed in the street with municipal consent. It was in position for a considerable number of years and it was in what was apparently the most convenient location for the purpose. Such use of the street with the consent of the municipal authorities was a lawful one: Wood v. McGrath, 150 Pa. 451. The position taken by the plaintiffs is that as soon as the leak occurred in the pipe a nuisance was created and that the backing of the water through the sewer had the effect to make the defendants trespassers and therefore liable for all of the results of the leak in the pipe from the time it gave way in accordance with the broad principle announced in Rylands v. Fletcher, L. R. 3 H. L. 330. The effect of the application of this doctrine is to make even an innocent person bear the responsibility of an insurer. It is to be observed however that exceptions to the doctrine have been made as in Nichols v. Marsland, L. R. 10 Exch. 255, which was the case of the giving way of the embankment of a dam; and in Carstairs v. Taylor, L. R. 6 Exch. 217, where the cause of the injury was of such an inconsiderable character as to have been unexpected; and in Smith v. Fletcher, L. R. 7 Exch. 305, where in the exchequer chamber evidence

225, (1916).]          Opinion of the Court.

was considered admissible to show that every reasonable precaution had been taken to guard against ordinary emergencies and that the acts of the defendants were done in the ordinary reasonable and proper mode of working a mine.  Whether the rule in England be as stated in Rylands v. Fletcher, *supra,* or subject to exception owing to the circumstances an examination of the American cases makes it clear that it has not been generally accepted in this country.  In Marshall v. Welwood, 38 N. J. Law 339, it was said of the English case that the fallacy in the process of argument by which the judgment was reached consists in this, that the rule mainly applicable to a class of cases to a great degree exceptional is amplified and extended into a general if not universal principle.  In Garland v. Towne, 55 N. H. 55, Justice LADD referring to Rylands v. Fletcher, said: "I am not aware that any court this side of the Atlantic has gone so far as this."  In Losee v. Buchanan, 51 N. Y. 477, the court declared that the law laid down in Rylands v. Fletcher is in direct conflict with the law as settled in this country.  And the law was stated to be that if one bring water upon his premises into a reservoir in case the banks of the reservoir give way and the lands of a neighbor are thus flooded he is not liable for the damage without proof of some fault or negligence on his part.  To the same effect are Livingston v. Adams, 8 Cowen 175, and Tapman v. Curtis, 3 Vt. 71.  The rule declared in Rylands v. Fletcher has not been followed in this State.  On the contrary, the Supreme Court expressed its unwillingness to recognize the arbitrary and absolute rule of responsibility which that case established to the full extent at least to which its general statement would necessarily lead in Penna. Co. v. Sanderson.

The better rule was there held to be that those who engage in an undertaking attended with risks to their neighbors are answerable for the conduct of the undertaking with diligence proportioned to the apparent risk

and the illustration is given of one who places a steam boiler on his premises and operates the same with care and skill so that there is no nuisance in which case in the absence of proof of fault or negligence upon his part he is not liable for damage to his neighbor occasioned by the explosion of his boiler.    The same principle was applied in Tourtellot v. Rosebrook, 11 Met. 460, which was an action to recover damages caused by a fire communicated to the plaintiff's land from a coal pit which the defendant lawfully set on fire on his own land.    It was there held that the burden was on the plaintiff to prove negligence.    There are numerous cases in this State which hold on the same principle that the mere fact of the escape of water or gas or steam from a pipe or boiler does not create a prima facie liability and cast on the owner of the pipe or boiler the burden of proof.    Kibele v. Philadelphia, 105 Pa. 41, was a case of an explosion of illuminating gas which escaped from a defective pipe and the important question was whether the municipality acting through its officials failed to exercise such care and diligence in ascertaining the nuisance and removing it prior to the plaintiff's injury as their duty required.    Koelsch v. Philadelphia Co., 152 Pa. 355, was a case of the escape of natural gas which accumulated in the cellar of the plaintiff's house and was disposed of on evidence of negligence.    In Rumsey v. Philadelphia, 171 Pa. 63, there was a leak in the water pipe and the principal question submitted to the jury was whether the city authorities did all that ought to have been done to locate and stop the leak which had been observed for a month or more.    Heh v. The Consolidated Gas Co., 201 Pa. 443, was also a case of escaping gas which had worked its way through the ground into the cellar of the plaintiff's house after which an explosion occurred followed by a fire which communicated to an abandoned coal mine beneath the house and the adjoining property. Gas had escaped in the same locality months before and people had been overcome by it.    The evidence was held

to be sufficient to take the case to the jury on the question whether the defendant had observed every reasonable precaution suggested by experience and the known dangers of the subject. Hartman v. Citizens Natural Gas Co., 210 Pa. 19, was the case of an explosion resulting from gas escaping from the service pipe leading from the defendant's main to the plaintiff's house. There was evidence that a leak had existed for a long time and should have been discovered and that was held sufficient to take the case to the jury. The trial judge charged the jury that "the measure of care is not that of an insurer to everyone who sustains loss by reason of gas escaping and exploding but it is liable for an explosion where it knew or by the exercise of ordinary care should have known of the defect in its pipes or mains"; and this was said by the Supreme Court to be "a fair statement of defendant's measure of duty which the jury were to apply." Shirey v. Consumers' Gas Co., 215 Pa. 399, was also a case of the explosion of gas and it was there held that "the question of the liability of the defendant without regard to the cause of the original break in the pipe must depend upon whether it exercised due care in the maintenance and inspection of its pipe lines." In Morgan v. Duquesne Boro., 29 Pa. Superior Ct. 100, there was a leak in a water pipe which resulted in damage to the plaintiff but it was held that she was bound to show that the alleged damage resulted either from a faulty construction or that the line being properly constructed had become out of repair and had been leaking so that the borough was negligent in not repairing it after notice actual or constructive of its condition or that the borough failed to exercise such care, caution and diligence as under the circumstances reasonable and ordinary prudence would require to be exercised. The trial judge charged the jury in effect that the borough was liable if the water from its line injured the plaintiff's property and this without notice and without a finding that the defendant was guilty of negligence. This view

of the law was held by this court to be erroneous and
that the burden rested on the plaintiff to show that her
damages resulted from the negligence of the defendant
and that she could have done this by showing the injury
to her property by the water escaping from the defend-
ant's line followed by evidence of unreasonable neglect
in repairing after actual notice or for so long a time that
the jury could infer negligence on the part of the bor-
ough officials in not discovering the defect.    Zimmer v.
Philadelphia, 57 Pa. Superior Ct. 20, was an action to
recover damages for injuries to a house resulting from
the breaking of a water pipe and was submitted to the
jury on the inquiry whether the municipality failed to
exercise such diligence and care as ordinary prudence
would require under the circumstances after notice ac-
tual or constructive of the defect.    These and other
cases establish the principle that liability does not arise
in the case of gas or water service controlled by a mu-
nicipality or a corporation on the mere fact of the escape
of gas or water from a defective pipe.    Is there any rea-
son why the same rule should not apply in the case of
individuals.    They are all put in the same category with
respect to responsibility for injury to others by the un-
lawful use or neglect of their property in Briegel v.
Philadelphia, 135 Pa. 451.    The furnishing of water or
gas by a municipality is not done in the exercise of a
municipal function.    It acts in the capacity of a private
corporation so far as this kind of business is concerned
and we think it can not be seriously maintained that a
private corporation is sheltered by exemption from lia-
bility for negligence or nuisance where an individual
would be bound under similar circumstances.    In this
respect they are all subject to the common duty to use
their own so as not to injure that which belongs to an-
other unless protected by charter power as in the case of
the exercise of the right of eminent domain.    If the mu-
nicipality or a water company had placed and main-
tained the pipe a liability would only have arisen under

the authorities cited on proof that the material used was inadequate or that the line was improperly laid or that the condition was such as should have put the municipality or company on notice and this doctrine applies with like reason and force to the case of a private owner. It is not alleged that this water service was not well constructed and suitable for the purpose nor is there any evidence tending to show that the defendants had notice of any defect in their line or of any facts which imposed a duty on them to inspect. Indeed, it does not appear from the evidence that they knew the line was in the street up to the time the break was discovered and on information of the condition the water service was at once discontinued. The appellants rely on Hauck v. Tidewater Pipe Line Co., 153 Pa. 366; Stokes v. P. R. R. Co., 214 Pa. 415; and Welliver v. Irondale Co., 38 Pa. Superior Ct. 26, in support of the action. These were clear cases of nuisance, however, resulting from the nature of the business and the structures employed or the manner in which the business was carried on. In the first case the defendant's oil was so handled at the pipe line terminus in the course of business that quantities of it were permitted to flow into the ground and to so percolate the soil as to injure the plaintiff. The injury resulted from the manner in which the business was carried on and was a probable if not a natural consequence of such course of business. If it had arisen from the explosion of a tank car or a properly constructed pipe a different question would have been presented. In Stokes v. P. R. R. Co., the defendant's agents discharged the contents of vessels containing acid on the plaintiff's land "and these acts were constantly repeated." Mr. Justice STEWART in delivering the opinion of the court said "the questions in the case were, first, were the continuous hurtful acts complained of committed, and second, if so, to what extent did they injure plaintiff's property?" There was a voluntary and continuous course of conduct in that case which clearly

created a nuisance under the plaintiff's evidence. Welliver v. Irondale Co., was an action to recover damages for injury to land caused by percolation of water through the embankment of the defendant's race. This injury was a necessary result of the defendant's structure. The embankment held back the water and prevented it from flowing in its natural course. It was inevitable taking into consideration the character of the soil that water would seep through the bank and onto the plaintiff's land. The defendant was in no better legal attitude than if he had diverted a stream. The fact that the water flowed more slowly or in smaller volume through the bank than if a waste gate had been opened does not affect the principle, but is a matter of degree only. A continuing condition of this character flowing as a highly probable if not necessary result of the construction of the bank undoubtedly amounted to a nuisance. We are not convinced however that these and similar cases support the appellant's contention as applied to the facts of this case. The defendants' pipe was a service pipe connected with the city main. It was necessarily longer than would have been the case if there had been a main in front of the property, but we can not see that the length of the pipe is a material consideration. If the defendants are liable on the facts presented no controlling reason is apparent why they would not have been if their water pipe had led directly from a main in front of them and the plaintiffs had been injured by the escape of water therefrom; and if liable to the plaintiffs it would seem reasonably to follow that a right of action would arise in favor of the city because of the disturbance of the pavement, and the same principle would make every property holder liable for the escape of gas or water or steam from his service pipes although he was in no default with respect to negligence and was without knowledge of the conditions causing the injury. The cases above cited and others clearly show that neither the city nor a private corporation

would be liable under like circumstances and we think the same rule applies with equal force to individuals. Our opinion is that the action of the trial judge was well taken on the facts exhibited by the testimony.

The judgment is therefore affirmed.

HEAD, J., Dissenting:

I am unable to accept as sound the conclusion reached by the majority of the judges who heard this case. I deem it unnecessary to undertake to review or analyze the numerous decisions from foreign jurisdictions referred to in the majority opinion for the obvious reason that, according to my judgment, the case at bar is ruled, one way or the other, by the decisions of our own Pennsylvania courts.

At common law the obligations of one private property owner to his neighbor were broadly and generally summed up in the maxim "sic utere tuo ut alienum non laedas." Since the very beginning the doctrine thus expressed has been a vital part of the law of this Commonwealth. It accords to every citizen the fullest liberty in the use and enjoyment of his own property compatible with the exercise of the same right by his neighbors. Its prohibition clearly marks the limit of such use. The failure or neglect to observe that prohibition is followed by liability. This cannot be escaped on the theory the act, the consequences of which worked inconvenience and injury to another, was not itself forbidden by any law and was therefore lawful; nor that it was done as carefully as it could be done. It is by the consequences that flow from the act rather than from the nature of the act itself or the manner in which it was performed the liability must be determined. Where the legislature in its wisdom creates municipal and other public or quasi public corporations, expressly authorized by the legislative will to construct and maintain certain works, the most careful execution of the chartered powers may unavoidably involve risks to the safety of individuals

and create inconvenience in their enjoyment of their property. In such cases the injury to the individual, necessarily following the performance of the legislative will, is swallowed up in the public benefit derived by the community at large by the execution of the power given by the lawmakers of the Commonwealth. It ,is thus properly and necessarily classified as damnum absque injuria. If, for instance, a railroad company cannot maintain its lines and operate its engines and cars without noise, smoke, steam, &c., the owners of adjacent property may indeed suffer annoyance that is real and tangible, but it is part of the price which the legislature has said must be paid by the individual to bring about the public and common benefit intended. Hence the decisions of the Supreme Court in Marchand v. P. R. R. Co.; Lippincott v. same, and cases of their class. A just recognition of this principle appears to me to account for the numerous cases against cities, boroughs and public transportation companies, relied upon in the majority opinion to support the conclusion reached.

In the case at bar the defendants are private citizens. The introduction by them into their own property of a water supply to enhance their enjoyment of it was a perfectly lawful act, but it was so maintained that it has worked hurt, inconvenience and damage to the plaintiffs. Why should they be remediless? As I view it, the case is strictly and clearly within the principle declared by the Supreme Court in Pottstown Gas Company v. Murphy, 39 Pa. 257; Hauck v. Tidewater Pipe Line Company, 153 Pa. 366, and our own case of Welliver v. Irondale Company, 38 Pa. Superior Ct. 26. In Hauck v. Pipe Line Company the defendant had buried a pipe line on its own right of way for the transportation of oil. The construction and maintenance of that line were perfectly lawful acts. There was no evidence offered or required that the line had been carelessly constructed or that it had not been maintained with reasonable care;

but oil did escape from the line beneath the surface of the ground and by seepage found its way beyond the lines of the right of way into the property of the plaintiff. The injury thus was not the result of the careless handling of the oil at the pipe line terminal by the employees of the company. In considering that case President Judge RICE, in the course of his opinion, in Welliver v. Irondale Company, supra, thus states the exact nature of the injury: "The plaintiff introduced evidence which tended to show that the oil escaped from defendant's pipes, percolated through the ground, and injured his springs and lands, &c." The defendant was thus in the situation of having violated the prohibition of the maxim we have already quoted and its liability followed because, while it had committed no unlawful act and was not shown to have been guilty of any negligence, yet it had produced, for its own benefit, on its own property, conditions which worked hurt, inconvenience and damage to its neighbor. In the Welliver case, above cited, the whole question was most carefully considered in the opinion of President Judge RICE. There the defendant was a private corporation not invested with the right of eminent domain. To enhance the profitable use of its own property, it constructed thereon a race or canal by which a water supply was brought to its plant. In the course of time some of this body of water seeped through the restraining banks and injured the adjoining lands of the plaintiff. There, as here, liability was denied because it was not shown by the plaintiff's evidence the canal had been negligently constructed or maintained. In his opinion Judge RICE says: "The contention that the defendant cannot be held liable, in the absence of negligence, because the damages resulting to the plaintiff are the result of the defendant's lawful use of its own land and the development of the natural resources thereof, cannot be sustained. This race is an artificial water course......The business is that which the de--

fendant company was chartered to carry on, it is lawful and it is conducted on the defendant's own land, but these facts, of themselves, do not absolve the company from the obligation so to conduct it that a private nuisance shall not be created by the percolation of water brought by artificial means upon its premises."

After a thorough and careful review of the many authorities the opinion demonstrates, as I think, that the case was properly within the principle laid down in Pottstown Gas Company v. Murphy, reaffirmed in Hauck v. Pipe Line Company, supra. In the present case, as in the Welliver case, the defendants introduced upon their own property an artificial supply of water for their own use and benefit. This was an entirely lawful thing to do, and the evidence in the present case, as in the former one, in no way showed any act of negligence in the construction or maintenance of the pipe line, but the injurious consequences complained of followed. If the obligation to so use your own property as not to injure that of another be potential, its prohibition has not been observed, and it is in accordance with natural justice as well as with the law of the Commonwealth, as I understand it, that these defendants should make good the injury resulting from their act rather than that the plaintiffs should be compelled to suffer the injury without compensation.

The attempt made to so construe these cases as to deprive them of force and efficacy in the determination of the case at bar, has, I submit, patently failed. The opinions delivered are too carefully expressed, too accurately discriminating, to leave room for debate as to the ground on which the judgments were rested. In both the acts from which the injurious consequences flowed were intrinsically lawful. But because of those consequences what was in itself harmless was converted into a private nuisance and liability necessarily followed.

I would hold therefore that the case at bar is ruled by

the cases just cited and should have been tried in accordance with the principles they have enunciated. I would reverse the judgment and send the case back for another trial.