## Clouse, Appellant, *v.* Crow.

*Mines and mining — Diversion of water — Injuries to land — Waters—Negligence—Theory on which case is tried.*

Every man has the right to the natural use and enjoyment of his own property, and if whilst lawfully in such use and enjoyment without negligence or malice on his part, an unavoidable loss occurs to his neighbor, it is damnum absque injuria.

Discharge of mine water, either by drift or from a lower level by a shaft, does not impose liability for injury to a neighbor's property if the same is done without negligence or malice.

In an action to recover damages for injuries to property caused by the flow of mine water, the burden of proof is on the defendant to show that the natural use of his property which caused the injury was unavoidable and could not have been prevented, except by an expenditure which would be substantially the deprivation of the use of one's property. If the defendant meets this burden, the plaintiff to recover must show that there was negligence or malice.

In an action to recover damages for injuries to land, it appeared that the plaintiff was the owner of a farm of twenty-four acres. Immediately adjoining his farm, and located on a higher level, the defendant on his property opened a coal operation twenty-five feet from the plaintiff's land. This was done by a drift in a westerly direction, with the dip of the coal. The water percolating through the coal accumulated in the interior of the mine. The drift or pit opening was higher than this water level and prevented its flow by gravity out of the pit mouth. A vein of fire-clay lay immediately below the coal and formed a water tight basin, which prevented the water in its natural flow from further percolation to the surface. To allow drainage, the defendant dug a small ditch along side of his mine track. This permitted the water to flow by gravity from the interior of the mine to the surface on his ground, thence to the plaintiff's ground, and being acidulous it destroyed the vegetation on about a half an acre of plaintiff's ground. There was no actual evidence that the injury could have been avoided by due care or expenditure, but the plaintiff raised no question as to the sufficiency of the evidence, and tried the case on the theory that such evidence was present. There was no proof

of malice or negligence. *Held,* that a judgment on a verdict for the defendant should be sustained.

After a trial judge has submitted a question to a jury from the standpoint from which both parties to the issue manifestly have tried it, it is not consistent with good faith to the court, that the one against whom the verdict is rendered should be permitted on appeal to question the correctness of the submission, except in cases where manifest injustice results from it.

Argued April 13, 1917. Appeal, No. 121, April T., 1917, by plaintiff, from judgment of C. P. Armstrong Co., June T., 1915, No. 113, on verdict for defendant in case of Fred C. Clouse v. Aaron T. Crow. Before OR-LADY, P. J., PORTER, KEPHART, HENDERSON, HEAD, TREX-LER and WILLIAMS, JJ. Affirmed.

Trespass to recover damages for injuries to land. Before KING, P. J.

The facts are stated in the opinion of the Superior Court.

Plaintiff presented, inter alia, the following points:

4. "If the jury find that the defendant changed the natural water courses, thereby causing mine water to flow over the plaintiff's land, which would not otherwise have flowed over the plaintiff's land, the defendant would be liable for any damage caused thereby."

Answer: Affirmed, provided the injury and damage was caused by the malicious and negligent act or acts of the defendant. (2)

1. "The right of the defendant to injure the plaintiff's land at all, to any extent, is an exception to the general rule, and the burden is upon the defendant to bring himself within the exception."

"Answer: Affirmed, but we say to you that before plaintiff can recover in this action the burden is on him to show that defendant acted either maliciously or negligently." (3)

6. "Where one takes the risk of injuring others to save trouble or expense to himself in the use or enjoy-

ment of his property he makes himself liable for any loss his conduct may inflict upon his neighbors."

"Answer: Affirmed, provided you find as a fact that the defendant in the case acted maliciously or negligently and thereby injury resulted to plaintiff's property." (4)

Defendant presented these points:

3. "The defendant had the right to remove the refuse and culm from his mine entry, and deposit it on his own land; if done without negligence or malice; he is not responsible for the injury suffered by the plaintiff."

"Answer: Affirmed." (5)

4. "The defendant, being the owner of the land, had the right to mine his coal, and if while lawfully exercising such natural use and enjoyment of his own property, without negligence or malice on his part, an unavoidable loss occurred to the plaintiff, it is damnum absque injuria, and for such the plaintiff cannot recover."

"Answer: Affirmed, provided the injury was not done maliciously." (6)

7. "If the jury should find from all the evidence in the case, that the defendant in the opening and operation of his coal mine, proceeded in a proper, usual and natural manner, without negligence or malice, and that the injury to the plaintiff could not have been avoided by reasonable expenditure, your verdict must be for the defendant."

"Answer: Affirmed." (10)

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were above instructions quoting them.

*C. E. Harrington,* with him *Harry C. Golden,* for appellant.—It was not necessary for plaintiff to show either malice or negligence, on the part of the defendant, if the jury believed from all the evidence, as it must have, because the facts were uncontradicted, and were

shown on both sides of the case, that the defendant cut into the fire-clay and changed the natural drainage conditions in such manner as to cause mine or sulphur water and refuse from the mine to flow down over plaintiff's land, which water, etc., would not have flowed over the plaintiff's land merely from the mining of the coal and the draining of the mine in the natural manner.

The rules of Pfeiffer v. Brown, 165 Pa. 267, supra, were applied by the court, relative to at least one branch of the case, without any evidence on the part of the defendant, to show that the injury caused to plaintiff could not have been avoided by reasonable care and expenditure; and the jury were instructed, both in the charge and the points, to pass upon this question without any evidence upon which to base their verdict: Horner v. Watson, 79 Pa. 242; Rainey v. Johnson, 25 Pa. Dist. Rep. 594.

*C. L. Wallace,* of *Wallace & Rohrer,* for appellee.— The court below was right in instructing the jury as it did with respect to negligence and malice: Penna. Coal Co. v. Sanderson, 113 Pa. 126; Robb v. Carnegie, 145 Pa. 324; Sullivan v. Jones & Laughlin Steel Co., 208 Pa. 540; Collins v. Chartiers Valley Gas Co., 131 Pa. 143; Strauss v. Allentown, 215 Pa. 96; Del. & H. Canal Co. v. Goldstein, 125 Pa. 246; Long v. Trexler, 5 Sadler 456.

If it were not necessary for the plaintiff, in the first instance, to make out a prima facie case by proof of negligence or malice before the burden of proof is shifted to defendant, a nonsuit could never result in a case involving the flowage of water: Strauss v. Allentown, 215 Pa. 96; Flaherty v. Pittsburgh C. C. & St. L. Ry., 63 Pa. Superior Ct. 622.

OPINION BY KEPHART, J., October 8, 1917:

Appellant was the owner of a farm of twenty-four acres. Immediately adjoining his farm and located on a

higher level, the appellee on his property opened a coal operation twenty-five feet from the appellant's land. This was done by a drift driven in a westerly direction, with the dip of the coal. The water percolating through the coal accumulated in the interior of the mine. The drift or pit opening was higher than this water level and prevented its flow by gravity out of the pit mouth. A vein of fire clay lay immediately below the coal and formed a water-tight basin, which prevented the water in its natural flow from further percolation to the surface. To allow drainage, the appellee dug a small ditch alongside of his mine track; this permitted the water to flow by gravity from the interior of the mine to the surface on his ground, thence to the appellant's ground, and being acidulous, it destroyed the vegetation on about half an acre of the appellant's ground.

The appellant bases his right to recover on the theory, first, that it was not necessary to show either malice or negligence on the part of the defendant if he "cut into the fire clay and changed the natural drainage conditions in such manner as to cause mine water to flow over plaintiff's lands which would not otherwise have done so"; second, that the defendant did not show that the injury could not have been avoided by reasonable care and expense. The appellee relies on the case of Pennsylvania Coal Co. v. Sanderson, 113 Pa. 126. In that case Mrs. Sanderson built across a small stream a dam for an ice and fish pond, and to fill a cistern from which her house was supplied with water. The coal company, by drift and later by shaft, established an operation a few miles away. The mine water ran from the drift by gravity and was pumped from the shaft, whence it ran by gravity into the stream used by Mrs. Sanderson. She was compelled to discontinue the use of the water. The Supreme Court, on the third consideration of the case, held: "The defendants, being the owners of the land, had a right to mine the coal. It may be stated, as a general proposition, that every man has the right to the

natural use and enjoyment of his own property, and if whilst lawfully in such use and enjoyment, without negligence or malice on his part, an unavoidable loss occurs to his neighbor, it is damnum absque injuria, for the rightful use of one's own land may cause damage to another, without any legal wrong." Or, the proposition as restated by Mr. Justice WILLIAMS, in Robb v. Carnegie Bros. & Co., 145 Pa. 324: "After much thought, we have arrived at these conclusions: (1) That the owners of coal lands may develop and operate the same, even to the injury of adjoining landowners, without remedy on the part of the latter, unless malice or negligence be shown. (2)......" Mr. Justice CLARK, in Pennsylvania Coal Co. v. Sanderson, supra, holds that mining cannot be done without freeing the shafts or drifts from water, and though the lifting of the water to a higher elevation was by an artificial process, both methods of relieving the mine from water were justifiable. "The deeper strata can only be reached by shaft, and no shaft can be worked until the water is withdrawn. A drift is in some sense an artificial opening in the land and accumulates and discharges water in a greater volume and extent, than would otherwise result from purely natural causes, yet mining by drift has, as we have seen, been held to be a natural user of the land. So, too, we think, according to the present practice of mining, the working of the lower strata by shaft, in the usual and ordinary way, must be considered the natural user of the land, for the taking out of the coal, which can be reached by shaft only; and, as the water cannot be discharged by gravity alone, it must necessarily, as part of the process of mining, be lifted to the surface by artificial means, and thence be discharged through the ordinary natural channels for the drainage of the country." It is true in this case that there was some reference to the fact that the stream had been polluted by the drift water before the water from the shaft was discharged therein, and that there was no evidence to discriminate

between the two acts. As Justice CLARK says: "The pollution of a clear stream might inflict an injury for which damages would be recoverable (that is, by pumping from a lower level) but we cannot see how damages could be estimated for the pollution of a stream which had already become foul from other causes, for which the law gave no remedy." But in that case it was held that the injury or damage to a neighbor's property, caused by the discharge of mine water, either by drift or from a lower level by shaft, were equally exempt from liability. That this was later recognized as being so decided is apparent from the use of these principles in Collins v. Chartiers V. Gas Co., 139 Pa. 111, where Mr. Justice WILLIAMS says: "If, in raising the mine water to the surface, for purposes of drainage, a surface stream is corrupted and rendered unfit for use, those affected thereby cannot recover damages: Penna. Coal Co. v. Sanderson, 113 Pa. 126." And in Pfeiffer v. Brown et al., 165 Pa. 267, where salt water was pumped up from a "100 foot formation" and flowed by a natural depression over the adjoining owner's land, to his injury, it was claimed that the water was discharged in the lawful and proper use of land, and within the exception to the general rule, sic utere, etc. The Supreme Court there held that the rule in the Sanderson case would apply but it should not be carried beyond a "proper use and an unavoidable damage." The "general proposition" enunciated in the Sanderson case was applied in Strauss v. Allentown, 215 Pa. 96, where the grading of the streets of Allentown backed water into the tail race of a mill. In Abraham v. Yardum, 64 Pa. Superior Ct. 225, Judge HENDERSON refers to the Sanderson case and discusses the applicability in this country of the case of Rylands v. Fletcher, L. R. 3 H. L. 330. In principle the discharge of the water from the mine in the present case does not differ from the discharge in the Sanderson case. Both were drained by an artificial process and water was discharged from a lower level. Under the rule of the Sanderson case,

248, (1917).]        Opinion of the Court.

the plaintiff, without showing negligence or malice, could not have recovered. But the case of Pfeiffer v. Brown et al., supra, and McCune v. Pittsburgh & Baltimore Coal Co., 238 Pa. 83, have to some extent modified the doctrine expressed in the Sanderson case. In the first case it is stated: "In Collins v. Chartiers V. Gas Co.," supra, it is laid down as definitely settled that the rule, for unavoidable damages to another's land in the lawful use of one's own land, no action can be maintained. "The use which inflicts the damage must be natural, proper, and free from negligence, and the damage must be unavoidable......Hence the particular inquiry is, first, whether the damage was necessary and unavoidable; secondly, if not, was it sufficiently obvious to have been foreseen, and also preventable by reasonable care and expenditure?......And the expense which will absolve him from the duty of preventing the injury must come substantially up to the same standard. If the expense of preventing the damage from his act is such as practically to counterbalance the expected profit or benefit, then it is clearly unreasonable, and beyond what he could justly be called upon to assume. If, on the other hand, however large in actual amount, it is small in proportion to the gain to himself, it is reasonable in regard to his neighbor's rights, and he should pay it to prevent the damage, or should make compensation for the injury done." In the second case, McCune v. Pittsburgh & Baltimore Coal Co., supra, it was held, that where the injury was sufficiently obvious to have been foreseen, that is, the injury was the natural result of such use of the property, a prima facie case would be made out by showing that the adjoining owner had been damaged by the flow of water from a lower level, under the maxim sic utere tuo ut alienum non lædas; second, that the burden of proof was on the defendant to show that the natural use of his property, which caused the injury, was unavoidable and could not have been prevented except by an expenditure which would be substantially the dep-

rivation of the use of one's property.   The Sanderson
case did not impose any such obligation as suggested
in these cases.   In that case, after stating what the
court did not intend to decide or require the coal com-
pany to do, it is said : "But we do say, that in the oper-
ation of mining, in the ordinary and usual manner, he
may upon his own lands, lead the water which percolates
into his mine, into the streams which form the natural
drainage of the basin, in which the coal is situate, al-
though the quantity as well as the quality of the water
in the stream may thereby be affected."   He is not re-
quired to lead the water elsewhere, if it can be done at a
reasonable expense.   He is not required to show that the
injury was unavoidable.   Assuming, as the court did in
the Sanderson case, that water is a necessary incident to
a mining operation, to such an extent that those who en-
gage in the business must know that they will encounter
water, and resultant damage must be foreseen, when an
injury is caused by the flowage of mine water, the bur-
den is on the defendant to show that it was unavoidable
and could not be prevented except by an unreasonable
expenditure.   If the defendant meets that burden, the
plaintiff to recover must show that there was negligence
or malice.   If this is shown by the plaintiff in the first
instance, of course he is entitled to recover.   If the de-
fendant fails to show that the damage is unavoidable
and could not have been prevented, except at an un-
reasonable expense, then under the authority of McCune
v. Pittsburgh & Baltimore Coal Co., supra, the plaintiff
need not show negligence or malice.   It is usually for the
jury to determine whether the injury could have been
avoided or prevented by a reasonable expense.   The suf-
ficiency of the evidence is of course always for the court.
None of the plaintiff's assignments of error raise the
point of the sufficiency of the evidence on the part of the
defendant to meet the burden imposed upon him.   In
fact the plaintiff tried the case on the theory that this
evidence was present.   It submitted two points in which

it asked the court to say that: "If the defendant could have prevented the injury to the plaintiff's land by an expenditure, however large in actual amount; he was bound to make this expenditure, providing the expenditure was reasonable in proportion to the gain to himself"; and again that: "The defendant would not be justified in damaging the plaintiff's land unless the damage was unavoidable, or avoidable only at such expense as would be practically prohibitory to the defendant in carrying on his mining operations." These points were affirmed. The verdict was for the defendant. "After a trial judge has submitted a question to a jury from the standpoint from which both parties to the issue manifestly have tried it, it is hardly consistent with good faith to the court that the one against whom the verdict is rendered should not ordinarily be permitted on appeal to question the correctness of the submission, except in cases where manifest injustice results from it": Carpenter v. Lancaster, 212 Pa. 581; Foehr v. N. Y. Short Line Railroad Co., 40 Pa. Superior Ct. 7. Complaint is made that the court did not properly answer the plaintiff's points as to the burden of proof placed upon the defendant. We have endeavored to point out the rule which may be drawn from the Sanderson case, Pfeiffer v. Brown et al., supra, and McCune v. Pittsburgh & Baltimore Coal Co., supra. We feel that the assignments of error to the charge of the court and answers to points are without merit. The charge as a whole sufficiently explained the law.

The assignments of error are overruled and the **judgment** is affirmed.