**DUVALL et al. v. 20TH CENTURY COAL CO., Inc.**

No. 451.

United States District Court
W. D. Kentucky, Owensboro Division.

May 8, 1952.

726

Earl F. Martin, Hartford, for plaintiffs.

S. Hugh Dillin, Petersburg, Ind., for defendant.

SWINFORD, District Judge.

The facts in this case are briefly these: The 20th Century Coal Company owned a tract of land in Ohio County, Kentucky, adaptable to strip mining. In 1947 it began stripping coal which resulted in the creation of a ditch or place where water accumulated. There were at that time other mining operations—underground mining operations—going on adjacent to its property. The plaintiffs in 1949 purchased this underground mine from Walter Wood, who testified that at the time he sold it, it had water in it; that it had always had water in it. They began an operation there in July, 1949. They were able to redeem a certain amount of the coal, in spite of the water which was there, by the exercise of ordinary mining practices and by the installation of a pumping system. The facts also show that this ditch accumulated, according to the evidence of the plaintiff, about 19 feet of water at one time, and according to the defendant less than that. At any rate, we may assume that it accumulated a substantial amount of water, somewhere between 4½ and 19 feet deep. The

mine in which the plaintiffs were operating —the Duvall mine—the underground mine of the plaintiffs—had a "squeeze" or certain parts of the roof of the mine fell in which destroyed the value of the coal in place at that part of the mine.

The facts further disclose that there was a certain stream, which, according to the plaintiff, was diverted into this channel or into the pit. The evidence on that is not entirely clear, but we may assume that it was, to a certain extent, diverted into the pit. There is no evidence to show what kind of a stream it was, whether it was a wet weather, a large or small stream or just what volume of water was ordinarily in it. Briefly, those are the undisputed physical facts, which may be reasonably inferred from the evidence.

The plaintiffs are asking the court to establish as precedent a rule of law that, as each side claims, has never been heretofore stated by the courts of this state. The court feels that since there is no case directly in point of an underground mine seeping water which is charged to have come from the ditch or drain of a strip mining operation adjacent to it, that the court must rely on well known and established principles of law affecting mining and affecting adjacent owners, and pertaining to percolating and surface water.

■ In the first place, it is fundamental that the owner of land has a right to the enjoyment of his fee for the purpose to which it may be reasonably adapted unless he so exercises that right in such a negligent manner as to interfere with the rights of his neighbor or to invade the right of his neighbor's enjoyment of his property. I think that is a reasonably succinct statement of a pertinent rule of law. The rule is borne out by the following authorities:

I quote from the Kentucky case of Jenkins v. Home Telephone Co., 120 S.W. 276, 277, 22 L.R.A.,N.S., 1167:

"It is said in 1 Cyc. [Law & Proc. p.] 769, the mutual rights, duties, and liabilities of adjoining landowners are dependent on the principle which requires one to enjoy his property in such a manner as not to injure that of another, but the application of this principle is to be limited so as not to restrain an owner of property from reasonable and prudent use and enjoyment of it. 'It is therefore a general rule of law that every owner of land has absolute dominion over it, and may make any legitimate use of it he sees fit, and, if injury results to the adjoining land by such use, it is damnum absque injuria.' "

■■ See also, Radcliff v. Mayor, etc., of Brooklyn, 4 N.Y. 195, 4 Comstock 195, 53 Am.Dec. 357. While this case is more than 100 years old, the language in the opinion is pertinent today as it expresses fundamental principles of the laws of property. The court said:

"But a man may do many things under a lawful authority, or in his own land, which may result in an injury to the property of others, without being answerable for the consequences. Indeed, an act done under lawful authority, if done in a proper manner, can never subject the party to an action, whatever consequences may follow. Nor will a man be answerable for the consequences of enjoying his own property in the way such property is usually enjoyed, unless an injury has resulted to another from the want of proper care or skill on his part. * * *

"Let us now see what a man may do in the enjoyment of his own property without being answerable to others for consequential damages—always assuming that he acts with proper care and skill. He may set fire to his fallow-ground; and though the fire run into and burn the woodland of his neighbor, no action will lie: Clark v. Foot, 8 Johns. 421. He may open and work a coal mine in his own land, though it injure the house which another has built at the extremity of his land: Partridge v. Scott, 3 Mee. & W. 220. And he may do the same thing, though it cut off an underground stream of water which before supplied his neighbor's well, and leave the well dry: Acton v. Blundell, 12 Id. 324. He may build on his own land, though it stop

the lights of his neighbor: Parker v. Foote, 19 Wend. 309; and even though he build for the very purpose of stopping the lights: Mahan v. Brown, 13 Id. 261 [28 Am.Dec. 461]".

Also see, Hauck v. Tidewater Pipe Line Co., 153 Pa. 366, 26 A. 644, 20 L.R.A. 642, 34 Am.St.Rep. 710; and Gregory v. Layton, 36 S.C. 93, 15 S.E. 352, 355, 31 Am. St.Rep. 857. In the latter case the court used the following language:

"Inasmuch as a person has the unquestionable right to use his own property as he chooses, doing with it as he pleases, the mere doing of an act upon one's own property cannot, of itself render one liable to an action for damages, but such liability must depend upon the manner in which it is done, or upon the nature of the act itself. If it is done so negligently as that thereby his neighbor's property is injured, or if the act is such that its natural and probable consequences would be to injure the neighbor's property, then the wrong consists in the negligence with which the act is done, or that the act itself was of such a nature as that the natural and probable consequences of it would be to injure the neighbor. The mere fact that the act causes inconvenience to the neighbor is not sufficient, for it is very obvious that there are very many acts which a person may lawfully, and with perfect impunity do upon his own premises which may result in some inconvenience to his neighbor."

For an excellent text on this question see 36 Am.Jur. 405, § 183; and 1 Am.Jur. 505, § 3.

■ For the court to hold that it was necessary for the defendant to fill the ditch would possibly cause it to be unable to operate without an economic loss and consequently deny the owner the right to a full enjoyment of possession and ownership of the coal. It would be an invasion of the legislative function. We have laws regulating mines; there are recognized statutory requirements pertaining to all kinds of mining. We have a department of mines and mining, supervision and inspection. For the court to establish as a requirement of the law that strip mining operators must leave their property when they have concluded their strip mining operation in a given locality in such a condition that no rain or surface water will accumulate, would go far beyond the function or authority of the court. Or for the court to hold that it was necessary for the owner to adequately drain the water would be another invasion of the function of the legislative branch of the government. It may be wise and it may be just to require such owner to drain craters that are left by this and similar operations, but it is a matter which addresses itself to the legislature after due investigation and determination of the whole mining business of the state rather than for a court to say here in a relatively minor operation that it shall be the law of the state and have the force and effect of a statute. Such a ruling by the court would be to establish as law that a strip mine operator is the insurer of the security of an adjacent shaft or underground mining operation that no water interfere with the operation of an underground mine. It would put the strip mining operator to the necessity of proving the fact or seriously handicap him in rebutting proof that percolating water accumulated in an underground mine was not the direct and proximate result of his failure to drain the lakes, ponds or pits left by strip mining operations. The law does not go that far.

■ There is another circumstance in this case which is to be considered. The condition existed at the time the plaintiffs purchased the mine. It was a permanent condition. One who purchases real estate takes the property with all of the inconveniences or circumstances attached to it. That is one of the items of consideration in the purchase price. The purchaser buys with full knowledge of the conditions, if they are permanent and in existence at the time of purchase. Had there been no water in the mine or had there been no operation by the 20th Century Coal Company adjacent to it, possibly the plaintiffs could not have bought the mine. That may have

been one of the reasons the owner of the mine—the grantor—wanted to sell it and was willing to take the price that was paid.

Now, as to the facts, the burden, of course, was upon the plaintiffs to establish that the water in their mine was not only water from the pit on the defendant's property, but water from the pit of the defendant to such an extent that it destroyed their operation. Even though there was a percolation directly through this embankment of two hundred odd feet—225 feet, at least, under the evidence—from this pit into the mine of the plaintiffs, unless it was of such a quantity that it was the proximate cause of the destruction of the right to operate the mine or the destruction of the mine to such an extent that it could not be operated, there would be no liability on the part of defendant.

The only direct evidence on that fact which the court has is Mr. Walter Wood's testimony; that he had operated that mine and other mines there for a number of years and that this mine had always had water in it. So, the court would have to hold, even under the facts in the case, that the plaintiffs have not sustained the burden of proof. It possibly could be water directly out of this pool, but that fact has not been established to the extent that this court can enter a money judgment against the defendant. There are a lot of good cases that can't be proved. The court can't speculate and it can't place an inference upon an inference. The plaintiffs, very likely, have made out the best case possible under the facts, but still the proof introduced does not reach the dignity of sustaining their claim by such a preponderance of evidence that the court is warranted in concluding that this was the water from the property of the 20th Century Coal Company.

There are a lot of circumstances to be considered. In the first place, if Slatey Creek had been a creek with any considerable volume of water running and draining into the ditch, it would have overflowed the top, which is a strong circumstance, in my opinion, to support the theory that the principal amount of water in the pit was rainfall rather than surface water. Another thing is the fact of physics which was testified to here by one witness and which the court must accept as a matter of scientific knowledge, that the amount of water there would not make such pressure as to create a running stream into the mine. Had it been so great the mine would have contained much more water and the pit would have contained much less water.

The cases which counsel for the plaintiffs has called to the attention of the court are largely, I think, surface water cases. I think that you will find in an examination of those authorities or any authority that to establish the identity or source of percolating water is one of the most difficult things to prove.

I believe in the light of the whole case, in the light of the evidence, the court should hold as a matter of law that the plaintiffs have failed to make out a case and further hold that the facts as established by the plaintiffs and the defendant lead the court to the conclusion that under the facts, the allegations of the complaint must be denied.